DELANEY, RESPONDENT, *v.* COOK ET AL., APPELLANTS.

(No. 4,254.)

(Submitted January 7, 1921.  Decided February 4, 1921.)

[195 Pac. 833.]

*Default· Judgments — Setting Aside—Refusal—When Improper*
*—Discretion.*

Default Judgment—Setting Aside—When Proper.
1.  To warrant the vacation of a default, it is necessary that the party in default show affirmatively that he proceeded with diligence, that the neglect was excusable, that the judgment if permitted to stand will affect him injuriously, and that he has a good defense on the merits.

Same—When Motion to Set Aside not to be Granted.
2.  While it is the policy of the law that every cause should be determined on its merits, a default judgment should not be opened where the neglect was inexcusable or in aid of an effort to prolong litigation.

Same—Excusable Neglect—When Refusal to Set Aside Error.
3.  Where, in an action against eight defendants, the one most vitally interested in the result was not served with summons and did not know that it had been brought until several days after default and the others relied upon him to make appearance and defend the action, and one of them was under the impression that the summons served upon him meant simply that he was to appear as a witness, *etc.,* refusal to open the default was error.

Same—Setting Aside—Discretion to be Liberally Exercised.
4.  Motions to open default judgments on the ground of mistake and excusable neglect are addressed to the sound discretion of the trial court, which discretion should be liberally exercised in furtherance of justice.

*Appeal from District Court, Teton County; J. B. Leslie, Judge.*

ACTION by John Delaney against Timothy Cook and seven others, begun in a justice court, where a default judgment was rendered. Motion to vacate the default was denied. On de-

1. When judgment by default may be vacated and set aside under statute, see note in 58 Am. Dec. 392.
Vacation of judgment when not especially authorized by statute, see note in 60 Am. St. Rep. 633.
3. Right to have default judgment opened on account of failure of person other than party or his attorney to attend to case, see note in Ann. Cas. 1913E, 752.

fendants' appeal to the district court the motion was again denied and the appeal dismissed. Defendants appeal. Reversed and remanded, with directions to set aside the default.

*Mr. William T. Pigott* and *Mr. T. H. Pridham,* for Appellants, submitted a brief; *Mr. Pigott* argued the cause orally.

*Messrs. Coffey & Greene,* for Respondent, submitted a brief.

MR. JUSTICE COOPER delivered the opinion of the court.

On October 30, 1917, this action was commenced by the plaintiff in the justice's court of Choteau township, Teton county, against the eight defendants named therein, to recover damages for injuries inflicted upon a mare by a stallion while attempting to breed her. Two of the defendants only were served with summons. None of the other defendants ever appeared in the action. On the morning of November 8, at 10 o'clock, no appearance had been entered for the defendants. The justice, after waiting until the hour of 11 o'clock, and none of the defendants having then appeared, permitted the plaintiff to prove his claim and rendered judgment for the full amount sued for and costs. Seasonably thereafter T. H. Pridham, Esq., an attorney at law, on behalf of all the defendants, served upon the plaintiff's attorney and filed notice of motion to set aside the default. On November 16 the motion, supported by the affidavits of Timothy Cook and Frank Harris, the only two defendants served with summons, and Thomas B. Cook, one of the defendants not served, was filed with the justice and by him set down for hearing November 22. An answer was also tendered on behalf of all eight defendants, putting in issue all the material allegations of the complaint. After a hearing on the day fixed the motion to vacate the default was denied. On November 26 an appeal was taken to the district court of Teton county. On February 18, 1918, the motion to open the default was taken up by the district court, and on that day overruled, and judgment dismissing the appeal

rendered and entered. The case is now in this court on appeal from the judgment.

The affidavit of Timothy Cook discloses that Thomas B. Cook, his brother, having charge of the horse, resides about thirty-five miles distant from his home, and at the time the affidavit was made they had not seen each other for about a month. Timothy Cook is uneducated, not versed in legal affairs, and has a very poor understanding of legal documents. Being under the impression that all that was required of him by the summons was that he appear on November 8 at 10 o'clock as a witness, at that time and for that purpose, he presented himself at the justice's court in the town of Choteau and was told by the justice to see the attorney for the plaintiff. The stallion in question belonged jointly to the eight defendants named in the complaint personally, and not as partners nor as an incorporation, and by agreement among them was placed under the care and management of Thomas B. Cook, and was by him kept constantly at his ranch and under his supervision for the convenience of all concerned. When the summons was served upon Timothy Cook, he (Timothy Cook) was busily engaged in moving his household goods from one place to another, and his mind was so distracted by his business affairs that he did not have an opportunity to correct the impression he was laboring under that his presence was only required as a witness, and not as a party to the action, and therefore did nothing other than appear at the justice's court as above indicated. Assuming that his brother would attend to the case, involving, as it did, the horse under his care, he waited to see if his brother, Thomas B. Cook, would come to Choteau to look after the case. Becoming alarmed at his failure to appear, he endeavored to ascertain whether any of the attorneys in Choteau had been employed to defend the action for his brother, and about 11 o'clock went to the office of Mr. Pridham, and, finding him busy with persons in his office and unable to see him personally, left the office, and, after waiting until 11:25 called Mr. Pridham by telephone and inquired if he was retained to de-

fend the case.  Mr. Pridham answered that he was; whereupon Timothy Cook proceeded to the office of Mr. Pridham, who called the justice by telephone, and only then ascertained that judgment by default had been taken.

The affidavit of Thomas B. Cook, made on November 16, is to the effect that he is manager of the Cook Horse Company named in the body of the complaint; that he had sole charge of the business affairs of that concern, and also the care and management of the horse about which the controversy arose; that neither the complaint nor summons in the cause was served upon him; and that he had no notice whatever of the pendency of the action until the morning of November 12, four days after default had been entered.

The affidavit of Frank Harris states that the stallion in question was placed under the care and management of Thomas B. Cook, and that he, Thomas B. Cook, being aware of the prospective trouble concerning the stallion, although no suit had yet been brought, early in the summer retained Mr. Pridham as attorney to attend to the matter.  It further appears by the affidavit that at the time summons was served upon him he was engrossed and absorbed in important private affairs demanding his personal attention, among which was providing a school for the children in the neighborhood, including his own, and securing a teacher therefor, which, owing to the scarcity of school-teachers, he had considerable difficulty in doing; that he was busily engaged in building a house in which to reside, one room of which was to be used as a school, in the doing of which he had engaged carpenters and their helpers and was compelled to give that matter his personal attention.  In addition thereto, the affidavit further states that some of his cattle had been lost, and because of fear upon his part that they might be driven out of the county, he went in search of them, found them, and brought them home, and for the purpose of sheltering them during the winter months he was compelled to construct sheds and corrals, all of which required his personal attention.  In addition to these facts, the affidavit also states that his wife

was unwell and unable to do her housework, making it neces-
sary for him to cook for himself and the household and to re-
main with and care for his wife during her illness, thereby
preventing him from going to the town of Choteau as he in-
tended to do, when and where he might have ascertained the
actual condition of affairs relative to the case; that, by reason
of the further fact that Thomas B. Cook had the stallion under
his care and was personally interested in protecting himself
from a charge of mismanagement of the horse, he relied upon
his interest in the matter and his judgment, assuming that he
was a defendant in the action and would appear.

The affidavits of the two defendants served aver that they
fully and fairly stated the facts in the case to Mr. Pridham,
their attorney, and were advised by him that they had a good
and substantial defense to the action upon the merits, and that
the judgment had been taken through mistake, inadvertence
and excusable neglect under the statute.

The chief contention appellants make for a reversal of the
[1] judgment is that the showing on motion to vacate the de-
fault entered in the justice's court was sufficient to entitle them
to the relief asked. In this we agree with counsel. In *Bowen*
v. *Webb,* 34 Mont. 61, 85 Pac. 739, the showing necessary to
invoke the exercise of judicial discretion in setting aside a de-
fault judgment is declared to be: "(a) That he [the party in
default] proceeded with diligence; * * * (b) his excusable
neglect; (c) that the judgment, if permitted to stand, will
affect him injuriously, and that he has a defense to plaintiff's
cause of action upon the merits." The party in default must
[2] show affirmatively that the default was the result of his
mistake, surprise or excusable neglect. But, when a showing
is made, relief is not to be granted as a matter of right, but
rather by the grace of the court exercising a legal discretion.
(*Bowen* v. *Webb, supra.*) In cases falling within its scope, the
statute itself suggests the grounds upon which the legal discre-
tion should be brought into action. (Rev. Codes, sec. 6589.)
Every cause ought to be determined upon its merits, if possi-

ble. "But this policy does not give countenance to inexcusable negligence, the result of which is to prolong litigation." (*Kersten* v. *Coleman,* 50 Mont. 82, 144 Pac. 1093.) We may add the suggestion that, while the statutory design is to further trials upon the merits, its remedial provisious ought not to be extended in aid of the negligent, the careless, or parties striving merely to postpone the day of judgment.

In disposing of the case, the justice apparently took no account of the undisputed fact that Thomas B. Cook, having the [3] greatest interest in the outcome of the suit by reason of his being in charge of the animal and the person most likely to take a leading part in defending the action, was neither served with process, nor knew that the action had been commenced, until November 12, four days after default had been taken. Furthermore, the affidavits of both Timothy Cook and Frank Harris are both to the effect that, knowing Thomas B. Cook had control of the horse at all the times mentioned, they relied upon his knowledge of and his interest in the matter, and assumed, as was natural for them to do, that he would attend to the case. These considerations, and, in addition thereto, the matters with which their minds were burdened, make out a clear case of excusable neglect under section 6589 of the Revised Codes, which the justice should have recognized instead of ignoring altogether. The affidavits not only present substantial reasons why they did not appear, but set forth facts sufficient to convince us that the case falls strictly within the purview of section 6589, *supra.* There is nothing in the record from which the inference could be drawn that the defendants were indifferent, careless, or negligent in failing to preserve their rights. The relief afforded in setting aside a default judgment operates merely as a brief delay, at most. Motions [4] of this character are addressed to the sound discretion of the court and ought to be liberally exercised in furtherance of justice.

In *Lovell* v. *Willis,* 46 Mont. 581, Ann. Cas. 1914B, 587, 43 L. R. A. (n. s.) 930, 129 Pac. 1052, Chief Justice Brantly, de-

livering the opinion of this court, very pertinently remarked: "If the affidavit had made a disclosure of facts showing that the character of the defendant's business was such as to absorb his attention and was so pressing that the average man would, under similar circumstances, have been likely to forget his other important interests, the conclusion of the court * * * might have been justified." In deciding the case, the lower court apparently lost sight of the purpose of the statute and placed its technical restrictions above the justice it was the design of the legislature to further.

The order of the district court dismissing the appeal is reversed, and the cause remanded, with directions to set aside the default and permit defendants to file their answer.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, HOLLOWAY and GALEN, concur.