REYNOLDS, RESPONDENT, *v.* GLADYS BELLE OIL CO.,
APPELLANT.

(No. 5,872.)

(Submitted January 13, 1926.  Decided February 3, 1926.)

[243 Pac. 576.]

*Default Judgments—Setting Aside—Refusal—Abuse of Discretion—Excusable Neglect—Sufficient Showing—Summons—Affidavit of Merits—Sufficiency.*

Default Judgments—Setting Aside—Neglect Alone not Sufficient to Deny Relief.

1.  The power granted to the district court under section 9187, Revised Codes of 1921, to set aside a default judgment is predicated upon the neglect of the movant, coupled with a showing of facts and circumstances which will reasonably excuse it; hence the presence of neglect alone is not sufficient to deny relief.

Same—Motion Addressed to Discretion of Court.

2.  Every case in which a default is sought to be set aside is dependent upon its own particular facts and circumstances, and the determination of the question rests in the sound legal discretion of the trial court, its action in the premises being reversible only on a showing of manifest abuse of that discretion.

Same — Not Favored by Law — Showing of Abuse of Discretion — What Sufficient.

3.  Judgments by default are not favored, it being the policy of the law to have every case tried upon its merits; trial courts in passing upon motions for opening default judgments should exercise the same liberal spirit which prompted the legislature in enacting section 9187, *supra,* and where a court refuses to grant such a motion no great abuse of discretion need be shown to warrant a reversal.

Same—Mailing of Summons to Discharged Counsel for Defendant—When Excusable Neglect.

4.  Where the resident agent of a foreign corporation had been served with summons, his act in mailing it to the general counsel of defendant without knowledge that the latter had been discharged and who failed to transmit it to his former client, and the failure of defendant company to advise its agent of his discharge, resulting in the entry of a judgment by default, were excusable under the circumstances of the case.

Summons—Personal Service After Making of Order of Publication—When Service Complete.

5.  Where, after the making of an order for publication of summons upon a nonresident defendant, the summons is personally served under section 9118, Revised Codes of 1921, the service does not become complete until the day on which the fourth publication would have been

---

1.  Statutes authorizing vacation of default judgment, see note in 58 Am. Dec. 392.

3.  See 15 R. C. L. 721.

4.  See 15 R. C. L. 708.

[75 Mont. 332.]

made if plaintiff had proceeded under the order of publication, and the date of personal service is considered the date of the first publication for the purpose of computing the time of service.

Default Judgments—Miscarriage of Letter Sent by Defendant to Counsel —Excusable Neglect.
6.  Miscarriage of a letter sent by defendant to his attorney to take care of a case pending against him, receipt of which would have avoided an entry of default, is a sufficient showing of excusable neglect to warrant the setting aside of the default.

Same—Summons—Failure of Plaintiff to File Return—Attorney for Movant may Rely on Records—Refusal to Open Default Error.
7.  An attorney is justified in relying upon the official court records for a determination of the status of a case pending; hence where plaintiff failed to have his agent who served the summons on a nonresident defendant file his return with the clerk, in compliance with the requirement of the statute, thus warranting defendant's attorney in presuming that, no return being on file, there was ample time for making appearance, refusal to open the consequent default was abuse of discretion.

Same—Default may be Set Aside for Other Than Statutory Grounds of Excusable Neglect.
8.  Aside from the statutory ground of excusable neglect on the part of a defendant in default, a party may be relieved where failure to make timely appearance is due to the action of the court or is attributable to plaintiff's own fault or irregular action in the case.

Same—Tender of Answer Presenting General Denial Insufficient.
9.  An answer which is but a general denial tendered in support of defendant's motion to set aside a default judgment on the ground of excusable neglect does not present a sufficient showing to enable the court to determine whether, if permitted to make appearance, he has a meritorious defense.

Same—Affidavit of Merits—Sufficiency.
10.  An affidavit of merits filed in support of a motion to set aside a default judgment in an action for services performed, which after denying that plaintiff commenced and ceased work on a certain date, alleged that plaintiff never was in defendant's employ "during the times mentioned in the complaint," and that defendant was not indebted to plaintiff in any amount, *held* sufficient to show that defendant had a meritorious defense, though made faulty by the insertion of the words quoted, presenting as they did a negative pregnant.

---

[1] Judgment, 34 C. J., sec. 525, p. 305, n. 70; sec. 674, p. 422, n. 25.
[2] Appeal and Error, 4 C. J., sec. 2825, p. 840, n. 33. Judgment, 34 C. J., sec. 524, p. 303, n. 60; sec. 677, p. 429, n. 79.
[3] Appeal and Error, 4 C. J., sec. 2825, p. 841, n. 46. Judgment, 34 C. J., sec. 515, p. 296, n. 70; sec. 677, p. 429, n. 80, 83.
[4] ·Judgment, 34 C. J., sec. 524, p. 304, n. 63.
[5] Corporations, 14a C. J., sec. 2351, p. 484, n. 97.  Process, 32 Cyc., p. 489, n. 26 Now.
[6]. Judgment, 34 C. J., sec. 524, p. 305, n. 69.
[7] Judgment, 34 C. J., sec. 519, p. 300, n. 38; sec. 674, p. 423, n. 34. Process, 32 Cyc., p. 497, n. 78.
[8] Judgment, 34 C. J., sec. 374, p. 164, n. 68, 69, 70; sec. 677, p. 429, n. 79.
[9] Judgment, 34 C. J., sec. 554, p. 342, n. 42.
[10] Judgment, 34 C. J. sec. 553, p. 339, n. 17.
10.  See 15 R. C. L. 718.

*Appeal from District Court, Cascade County; Stephen J. Cowley, Judge.*

ACTION by John J. Reynolds against Gladys Belle Oil Company. Judgment for plaintiff and defendant appeals. Reversed and remanded.

*Messrs. Cooper, Stephenson & Hoover* and *Messrs. Ayers & Toole,* for Appellant, submitted an original and a supplemental brief; *Mr. W. H. Hoover* argued the cause orally.

When the trial court has abused its sound legal discretion in refusing to set aside a default, such improper exercise of the same will be corrected on appeal. (*Brothers* v. *Brothers,* 71 Mont. 378, 230 Pac. 60; *Delaney* v. *Cook,* 59 Mont. 92, 195 Pac. 833; *State ex rel. Kolbow* v. *District Court,* 38 Mont. 415, 100 Pac. 207; *Greene* v. *Montana Brewing Co.,* 32 Mont. 102, 79 Pac. 693; *Collier* v. *Fitzpatrick,* 22 Mont. 553, 57 Pac. 181; *Morse* v. *Callantine,* 19 Mont. 87, 47 Pac. 635; *Herbst Importing Co.* v. *Hogan,* 16 Mont. 385, 41 Pac. 135; *In re Davis,* 15 Mont. 347, 39 Pac. 292; *Simpkins* v. *Simpkins,* 14 Mont. 386, 43 Am. St. Rep. 641, 36 Pac. 759; *Heardt* v. *McAllister,* 9 Mont. 405, 24 Pac. 263; *Benedict* v. *Spendiff,* 9 Mont. 85, 22 Pac. 500.)

Where the blunt element of misleading circumstances has appeared in cases resulting in a default, this court has been quick to uphold the right of a defendant to relief from such default, and to answer to the merits. (*Whiteside* v. *Logan,* 7 Mont. 373, 14 Pac. 34; *In re Davis Estate,* 15 Mont. 347, 39 Pac. 292; *Anaconda Min. Co.* v. *Saile,* 16 Mont. 8, 50 Am. St. Rep. 472, 39 Pac. 909; *Mantle* v. *Largey,* 17 Mont. 479, 43 Pac. 633; *Eakins* v. *Kemper,* 21 Mont. 160, 53 Pac. 310; *Greene* v. *Rowan,* 29 Mont. 263, 74 Pac. 456; *Collier* v. *Fitzpatrick,* 22 Mont. 553, 57 Pac. 181; *Greene* v. *Montana Brewing Co.,* 32 Mont. 102, 79 Pac. 693; *Jones* v. *Jones,* 37 Mont. 155, 94 Pac. 1056; *Hauser* v. *Newman,* 39 Mont. 252, 102 Pac. 334; *Brown* v. *Weinstein,* 40 Mont. 202, 105 Pac. 730.)

*Mr. W. F. O'Leary,* for Respondent, submitted a brief and argued the cause orally.

The affidavit of merits submitted on behalf of the Gladys Belle Oil Company is fatally defective for the reason that it is no more than a general denial, and does not deny that the plaintiff was in the employ of the defendant, but only denies that he was in the employ of defendant at the times mentioned in the complaint. Moreover the entire affidavit of merits only amounts to a conclusion, and in fact is no affidavit of merits at all. It is pregnant with the admission that the plaintiff was in the employ of the defendant at some time, and the answer in the case is only a general denial. (*Bowen* v. *Webb,* 34 Mont. 61, 85 Pac. 739; *Crawford* v. *Pierse,* 56 Mont. 371, 185 Pac. 315.) There is no showing that the judgment as it stands is unjust. (*Danielson* v. *Danielson,* 62 Mont. 83, 203 Pac. 506; *Crawford* v. *Pierse,* 56 Mont. 371, 185 Pac. 315; *State ex rel. Hart-Parr Co.* v. *District Court,* 58 Mont. 114, 190 Pac. 982; *Donnelly* v. *Clark,* 6 Mont. 135, 9 Pac. 887.) The record here shows that the president of the defendant company, Green, knew all about this case when he was in Montana, but that after he went to Oklahoma on September 13, 1925, he evidently forgot about it. ''A mere statement that the defendant was engaged in important business so that he forgot about the service of summons amounts to a conclusion and is insufficient showing to justify the court in opening up a default.'' (*Lovell* v. *Willis,* 46 Mont. 581, Ann. Cas. 1914B, 587, 43 L. R. A. 930, 129 Pac. 1052; *Bowen* v. *Webb, supra.*)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Gladys Belle Oil Company, a foreign corporation, has appealed from a judgment by default in favor of plaintiff for the sum of $18,400, with interest and costs,

after timely motion to set aside defendant's default had been
by the court overruled.

The only question presented is: Did the court manifestly
abuse its sound, legal discretion in refusing to open the de-
fault and permit the defendant to answer to the merits?

The action resulting in the entry of the judgment appealed
from was commenced in the district court of Cascade county
on July 6, 1925, whereupon summons was issued, as was also
a writ of attachment. The writ was served by the sheriff
of Liberty county by levying upon certain personal property
of the defendant, and was duly returned and filed on July 15,
1925. The summons was also placed in the hands of the
sheriff of Liberty county on the seventh day of July,. and a
return thereon made to the effect that he, the sheriff, was
unable to find the defendant within his said county, but the
summons with the return thereon was not filed with the clerk
of the court of Cascade county until August 21, 1925, at which
time counsel for plaintiff filed therein a demand for the issu-
ance of an *alias* summons and his affidavit for publication
thereof, in which he declared: "That the defendant is a foreign
corporation having no managing or business agent, cashier,
secretary, or other officer within the state; that the defendant
is an Oklahoma corporation, and that the principal place of
business and post office address of said defendant is Tulsa,
Oklahoma." The clerk forthwith issued the *alias* summons,
and made and entered an order for the publication of the
summons in the " 'Great Falls Leader,' a newspaper published
at Great Falls, Montana. * * * " The *alias* summons
was never published, for, in lieu thereof, counsel for plaintiff
secured personal service upon the corporation of a copy of the
summons and a copy of the complaint by the sheriff of Tulsa
county, Oklahoma, who made return of his service by deliver-
ing and leaving such copies with the secretary of defendant
company at Tulsa on the twenty-fifth day of August, 1925.
The sheriff did not return the *alias* summons to the clerk of

the court for filing, but evidently returned it to counsel for plaintiff, for, on the eighth day of September, 1925, the sheriff of Yellowstone county, Montana, made return upon this same *alias* summons that he duly served the same upon the defendant company on that date by delivering and leaving a copy of the *alias* summons and copy of the complaint with one Sterling M. Wood, of Billings, as the designated agent of the company for the acceptance of process in the state of Montana. This sheriff also failed to return the summons to the clerk of the court for filing, and also evidently returned it to counsel for plaintiff, for the summons was not filed in the office of the clerk of the court until the twenty-ninth day of September, 1925, when counsel for plaintiff immediately caused the default of the defendant for nonappearance to be entered, and the summons, as filed that day, has attached to it the two certificates of service described.

Thereafter the law firm of Ayers & Toole, of Great Falls, appeared for defendant, and filed its motion to set aside the default entered, and to permit the defendant to answer to the merits. This motion separately stated the ground therefor, to-wit, that the default was taken against the defendant through its (1) mistake, (2) inadvertence, (3) surprise, and (4) excusable neglect. It was accompanied by a tendered answer and affidavit of merits, and was supported by the affidavits of Harrison S. Green, president of the company, Sterling M. Wood, the designated agent, and Warren Toole, of the firm of Ayers & Toole. The motion came on regularly for hearing, and on the third day of November, 1925, at which time plaintiff filed ten counter affidavits, and after some interrogation of counsel by the court, the motion was promptly denied. The judgment appealed from was thereupon entered.

The affidavit of Sterling M. Wood, who is an attorney at law, shows to the court that he represented the defendant in no other capacity than as the designated agent on whom service of process might be made in the state; that he had

not been served with any other process for more than eleven months prior to September, 1925, and that theretofore he had always sent papers served upon him to one Peek, of Tulsa, Oklahoma, whom he knew to be the general counsel of the company, and that, on this occasion, as soon as the copies were served upon him, he followed this custom by mailing these papers to Peek, in care of the defendant company at Tulsa. It further appears from the affidavit of Green that Peek had been discharged as counsel for defendant, and that the papers mailed to Peek did not come into the hands of Green, as president, until September 28, 1925.

From the remarks of the court, while interrogating counsel, it would seem that the motion was denied upon the sole ground that Wood was negligent in presuming that Peek was still counsel for defendant and in mailing the papers to Peek rather than direct to defendant company. Aside from this phase of the case, however, it appears from uncontradicted statements in the supporting affidavits and the counter-affidavits that Green was, during all of the time with which we are concerned, the president of the defendant company, an attorney at law, and had the exclusive management and control of all litigation in which the defendant was interested; that he was in Cascade and Liberty counties for some time during the latter part of August or early part of September, 1925, and there met and talked with the plaintiff about the case and the nature of plaintiff's asserted claim against the company, and promised to look into the matter and report his conclusions to plaintiff. He also talked with one L. C. Stevenson concerning some sort of settlement with plaintiff. He knew that the action had been commenced, for he saw the notice of attachment, and knew that a keeper was in charge, but was not advised that service of the summons had been made on the company, if it had then been made, nor was any attempt made to get service upon him as president while he was in the state.

In his affidavit, Green states that he returned to Tulsa on September 13 in response to a telegram advising him of the institution of receivership proceedings at that place, and that it became absolutely necessary for him, from the time he reached Tulsa, up to and including the twenty-sixth day of September, to devote all of his time, both night and day, to the preparation and trial of such case or cases, and, in addition thereto, it was necessary for all of the employees of the office to devote all of their time to such matters.

In refutation of this latter assertion, the counter-affidavits contain two letters written by Green on September 24, 1925, from Tulsa; one to plaintiff, the other to L. C. Stevenson. In the letter to plaintiff, he states: "I want to tell you that, since my return, I have gone into the matter as fully as possible of your employment and claim, and I am compelled to come to the conclusion that you are mistaken in making any claim against our company." He advised Stevenson: "I have gone into the matter very carefully, and do not see how it is possible for him [the plaintiff] to maintain any kind of a claim against the Gladys Belle Oil Company." In each of the letters, he stated that, since his return, he had been "hopelessly swamped" with more or less serious litigation, and had found it absolutely impossible to keep up with his work.

In addition to the showing made by Green that the press of business caused him to forget the matter of plaintiff's attachment until the twenty-fourth day of September, when he wrote Toole concerning the sufficiency of the sureties on the undertaking on attachment, it appears from the affidavits of Green and Toole that, prior to leaving Montana, Green wrote Toole to look after the Reynolds case, but that this letter never reached Toole, and that he, Toole, or his firm, had not any knowledge or information of the pendency of the action until the receipt of the letter, concerning the sureties, on the 28th of September, which was the last day for appearance under the service on Wood, and in which no mention of service was

made.    Thereupon Toole immediately went to the courthouse, secured the files in the action, and ascertained the status of the case as revealed by the record.    He then went to the office of the "Leader," and there learned that no publication had been made, and was satisfied in his own mind, from the showing made by plaintiff's counsel in the record, that no service had been attempted within the state, but realized that personal service in Oklahoma might have been made or was being attempted.    With this thought in mind, Toole immediately wired Green for information as to when, if at all, defendant was served with summons, and advised him that exception to the sureties must be taken within five days after such service. The reply to this message was received the following morning, but after the default had been entered.

Counsel for plaintiff contends that this showing discloses neglect on the part of Green, Wood and Toole, and insists that such neglect was inexcusable.

1. It is true that there is here a showing of neglect, but [1, 2] that is the very purpose of the affidavits filed.    The relief which the court is authorized to grant is predicated upon the neglect of the movant, coupled with a showing of facts and circumstances which will reasonably excuse his negligent act or omission.    (Sec. 9187, Rev. Codes 1921; *Greene* v. *Montana Brewing Co.,* 32 Mont. 102, 79 Pac. 693.)    The sufficiency of this showing in any case must depend upon the particular facts and circumstances of such case, as "no two cases will be found which present the same circumstances for consideration." (*Brothers* v. *Brothers,* 71 Mont. 378, 230 Pac. 60, and cases cited.)    The determination of the question rests within the sound legal discretion of the trial court (*Eder* v. *Bereolos,* 63 Mont. 363, 207 Pac. 471; *Robinson* v. *Petersen,* 63 Mont. 247, 206 Pac. 1092; *Delaney* v. *Cook,* 59 Mont. 92, 195 Pac. 833), and its action will only be reversed on appeal on a showing of manifest abuse of that discretion (*Bowen* v. *Webb,* 34

Mont. 61, 85 Pac. 739; *Swilling* v. *Cottonwood Land Co.*, 44 Mont. 339, 119 Pac. 1102).

However, since "it is the policy of the law to have every [3] litigated case tried on its merits," judgments by default are not favored. (*Lovejoy* v. *Stutsman*, 46 Okl. 122, 148 Pac. 175; *Berri* v. *Rogero*, 168 Cal. 736, 145 Pac. 95; *McGinnis* v. *Beatty*, 28 Wyo. 328, 204 Pac. 340; *Greene* v. *Montana Brewing Co.*, *supra*; *Brothers* v. *Brothers*, *supra*.) In furtherance of justice, trial courts should, in applying the above statute to a given case, maintain and exercise that liberal spirit which prompted the legislature to grant them this discretionary power, and, while this court will disturb the action of a trial court in opening default only in exceptional cases, "no great abuse of discretion by the trial court in refusing to set aside a default need be shown to warrant a reversal." (*Brothers* v. *Brothers*, *supra*; *Eder* v. *Bereolos*, *supra*; *Nash* v. *Treat*, 45 Mont. 250, Ann. Cas. 1913E, 751, 122 Pac. 745.) It is therefore apparent that an abuse of discretion may be made "manifest" in a case where the court has refused to open a default, by a showing which would not be so considered in a case wherein the court has granted such a motion.

2. With these rules in mind, we will take up the alleged acts of neglect attributable to the defendant. These are so interwoven one with the other that, while one certain act might, if standing alone, be inexcusable, they must be considered as a chain of circumstances and a conclusion reached by a consideration of the entire chain.

(a) Neglect is attributed to the designated agent, Wood, [4] in failing to mail the papers served upon him direct to the defendant rather than to the attorney he had theretofore known as the general counsel of the company. In this Wood followed a well-established custom among lawyers everywhere, and a practice he had invariably followed theretofore. He had no reason to believe that, in this instance, the matter would not receive attention, at least as expeditiously, by this manner

of transmission as though mailed direct, and his act of neglect would not have resulted in a default, had it not been for other circumstances shown.

(b) The officers of the defendant company were negligent in failing to advise Wood of the change in the personnel of its legal department, and it was their negligence which induced Wood to mail the papers to Peek; but this failure was but a link in the chain of circumstances which finally caused the entry of default, and there is nothing in the record to cause those officers nor anyone else to believe that a reputable attorney who had theretofore been acting for the corporation would, if papers from a distant state came into his hands, fail to promptly turn them over to his successor . or some competent officer of the company.

(c) This brings us to Green's neglect and its connection with the foregoing.

It is contended by plaintiff's counsel that, as it required but four days for the transmission of a letter from Billings, Montana, to Tulsa, Oklahoma, the papers transmitted by Wood were in the hands of .Peek on the 12th of September, and that the showing made that they did not come. into the hands of Green until the 28th does not negative a delivery by Peek to some authorized agent of the defendant company, and that, as no affidavit was secured from Peek, it must be presumed that, if obtained, Peek's affidavit would be adverse to defendant or would contradict Green's statement; that it must therefore be presumed that these papers were in the possession of defendant on or about September 12 or 13; and that defendant's position would be the same then as though personal service had been made on Green before he left the state. It is further contended that Green's affidavit of neglect by reason of pressing business which absorbed all of his time and gave him no opportunity to consider this case is impeached by his letters contained in the counter-affidavits, and that,

under these circumstances, Green's delay to take action until the 28th constitutes inexcusable neglect.

Conceding that this position is unassailable, in the absence of any further showing, there are three additional matters appearing in the showing made which should have been given consideration by the trial court:

(d) The summons was served upon the defendant at Tulsa [5] on August 25. Such service is authorized, after securing an order of publication (sec. 9118, Rev. Codes 1921) in lieu of publication; but, unlike personal service within the state, this service is not complete until the day on which the fourth publication would have been made, had the plaintiff proceeded under the order for publication, and the date of personal service is considered the date of the first publication for the purpose of computing the time of service. (*Bowen* v. *Harper*, 6 Idaho, 654, 59 Pac. 179.)

Section 9118 was carried forward from the Revised Codes of 1907, where it appeared as section 6521, and was construed as it is here construed, in the case of *McLean* v. *Moran*, 38 Mont. 298, 99 Pac. 836, but in conclusion it was there stated that "whether that service is made by publication and mailing or by delivering a copy of the summons, together with a copy of the complaint to the defendant personally, the person so served shall have the full period of four weeks and twenty days within which to make his appearance." While it is clear from this statement that, after such personal service, the computation shall be made as though there had been a publication and mailing, the statement is not technically correct; in neither case would the defendant be entitled to "the full period of four weeks and twenty days." The statute declares that "the service is complete on the day of the fourth publication," which would be at the end of the third week, and the defendant would, therefore, have but three weeks and twenty days, or forty-one days, after the date of the first

publication, or such personal service, in which to make his appearance.

This service would entitle the defendant company to appear at any time up to and including the fifth day of October, 1925. Knowledge of this service must be imputed to Green, the president of the company. Knowing of this service, Green would be lulled into fancied security, and would have no reason to inquire as to whether any further service had been either made or attempted, and, when he wrote the letter which reached Toole on September 28, he would know that, under this service, Toole would have at least one week after its receipt in which to make appearance for the defendant; but even these facts would not justify the defendant's position, had Green done nothing under this service, because of the subsequent service upon the company, commented upon under subdivision (c) above, and under which the attempted excuse fails; but

(e) On leaving the state in September at a time which [6] brought him to Tulsa on the 13th, Green wrote to Toole to look after the Reynolds case. He is said to have done so, ''out of an abundance of caution.'' He may well be said to have done so because of the personal service on the defendant theretofore made, knowledge of which is imputed to him at that time. Had this letter reached Toole, he would have taken care of the case, and no default would have resulted. Toole's subsequent actions demonstrate that he was ready to act promptly whenever the matter was brought to his attention. This letter, however, miscarried.

Assuming that Green made the mail the agent of the defendant for the delivery of this notice, negligence may be attributable to the defendant; but this showing of neglect is akin to that in the case of *Loeb* v. *Schmith,* 1 Mont. 87, wherein a default was held to have been properly set aside when it was made to appear that a demurrer, sent by express within time, was delayed until after the time for appearance had expired

and default had been entered. Had Green, at that time, had full knowledge of both the service on the company and of that on Wood, its agent, and on his hurried departure from the state, and, being unable for want of time to see Toole personally, had notified Toole of such service by mail and directed him to attend to the matter, and such letter had miscarried, such a showing would be one of excusable neglect; we see little distinction between this supposititious case and what did actually occur.

(f) Finally, the following set of circumstances, it seems to [7] us, should have appealed strongly to the spirit of justice and fair dealing which should actuate trial courts in ruling upon a motion such as this:

On receipt of Green's letter on September 28, Toole had what he terms "the last clear chance." He had all of that day in which to appear for defendant, and his actions, as set out in his affidavit, show that he would have done so, had he had any intimation that the case was in that condition. Had the plaintiff and his agents not also been guilty of neglect, Toole would have had full information of the nature and time of service on the morning of the 28th, when he searched the records and visited the "Leader" office. It is true he might have secured such information by appealing to counsel for plaintiff who also resided in Great Falls, but an attorney is justified in relying upon the official records for a determination of the condition of a case pending in the courts of this state, and should not be misled by an erroneous showing made in such records, either by insertion or omission, and, when it is made to appear that an attorney has been so misled, our courts should be prompt in relieving his client from the effect of such a condition of the records.

As heretofore stated, the *alias* summons, to which are attached the returns of both the Oklahoma sheriff and the sheriff of Yellowstone county, was withheld from the record until the morning of September 29. Section 9124, Revised Codes

of 1921, provides that "it shall be the duty of the sheriff, or other person serving a summons or other process or order required by any of the provisions of this Code, issued out of any of the district courts of this state, to make due and legal return of such service, and file the same with the clerk of the court in which such action or proceeding is pending, not more than ten days after the making of such service, where the same was made in the county in which such action or proceeding is pending, and not more than fifteen days after the making of such service, when the same was made outside of the county in which such action or proceeding is pending. Any failure to make and file such return as required may be punished as a contempt of court." The purpose of the statute is plain. It requires the making of a record in the case which will disclose, prior to the expiration of the time for appearance, the time and manner of service to anyone examining the record, as did Toole, independent of the copies required to be left with the person on whom service is made. To insure compliance with this statute, the legislature has declared that failure to obey its mandatory provisions may be punished as contempt of court.

In this state it is presumed "that official duty has been regularly performed." (Sec. 10606, subd. 15, Rev. Codes 1921.) Toole was justified in presuming that, as the summons, with the return thereon, was not on file, no service thereof had been made prior to the fifteen-day period preceding September 28, and it is apparent that, regardless of the neglect of defendant prior to that date, it would not have been in default had it not been for the action of those representing the plaintiff in failing to file the summons on or before September 23, as required by the statute.

Aside from the statutory ground of excusable fault on the [8] part of the movant, it is held that a party should be relieved from a default "where there is a legal and sufficient excuse for the delay, as where the delay was due to the action

of the court, or is attributable to the plaintiff's own fault, or irregular action in the case." (34 C. J. 164; *Sweeney* v. *O'Dwyer,* 45 Misc. Rep. 43, 90 N. Y. Supp. 806; *Royce* v. *Mott,* 1 How. Pr. (N. Y.) 50.) This rule seems to be recognized in this state in the following cases: *Whiteside* v. *Logan,* 7 Mont. 373, 17 Pac. 34, *In re Davis' Estate,* 15 Mont. 347, 39 Pac. 292, *Anaconda Min. Co.* v. *Saile,* 16 Mont. 8, 50 Am. St. Rep. 472, 39 Pac. 909, *Greene* v. *Rowan,* 29 Mont. 263, 74 Pac. 456, *Hauser* v. *Newman,* 39 Mont. 252, 102 Pac. 334, and *Brown* v. *Weinstein,* 40 Mont. 202, 105 Pac. 730, in each of which cases there appears the element of fault on the part of the plaintiff, misleading the defendant into a position where default was taken against him, and in each case this court unhesitatingly upheld the right of the defendant to relief from the default so caused.

Under all of the circumstances detailed above, and particularly those last appearing herein, the court should have set aside the default and permitted the defendant to answer to the merits, and its failure to do so constituted a manifest abuse of its legal discretion.

3. The question as to whether defendant showed that it had a meritorious defense was not presented to the trial court, and was not taken into consideration in denying the motion.

The tendered answer is but a general denial, and is not suf-[9] ficient to entitle the defendant to relief under the statute on a showing of excusable neglect. (*Schaeffer* v. *Gold Cord Min. Co.,* 36 Mont. 410, 93 Pac. 344; *Donlan* v. *Thompson Falls C. & M. Co.,* 42 Mont. 257, 112 Pac. 445.) The purpose of requiring the movant to set out, either in an answer or affidavit of merits, the facts on which he relies is to enable the court to determine whether, if permitted to appear, he might prevail in a trial; if not, it would be a useless waste of time and expense to open the default, and no such determination could be made from the ordinary general denial, under which a variety of defenses may be interposed.

In addition to the tendered answer, defendant filed with its [10] motion an affidavit of merits, which contains the following statement: ''Deponent further says that the plaintiff John J. Reynolds did not commence to work for the defendant on June 1, 1922, and continue in said employment until December 31, 1924, for the sum of $500 per month and expenses; and deponent further says that the said plaintiff * * * was never, at any time, in the employment of the defendant * * * during the times mentioned in said complaint, and that the defendant is not indebted to the plaintiff in the sum of eighteen thousand, four hundred dollars * * * or in any other sum.''

Counsel for plaintiff asserts that this is but a statement of conclusions, and no more than a general denial, not entitling defendant to relief, citing *Bowen* v. *Webb,* above, and *Crawford* v. *Pierse,* 56 Mont. 371, 185 Pac. 315, and that the statement is pregnant with the admission that plaintiff was employed by defendant at some time. In the cases cited, the court condemned the setting out of the bald conclusion that defendant had a meritorious defense, without stating the facts from which the court could draw its own conclusions on the subject. Here, while the statements made are, of necessity, denials, they are not the general denials found in a pleading, but succinct statements of fact, denying the facts set out in the complaint, and, were it not for the phrase ''during the times mentioned in the complaint,'' are sufficient to enable the court to determine whether defendant has a meritorious defense on the merits. The facts thus alleged might, or might not, be established on the trial, but that is a question with which neither the trial court nor this court is concerned. The affidavit alleges such to be the facts which would be established just as an answer would.

If A., without foundation in fact, should allege in a complaint that on a day certain he agreed to perform certain labor for B., and that B. agreed to pay him a certain wage

therefor, and that pursuant to the contract he performed such labor, for which B. refused to pay, and that there is due him from B. a certain sum of money, what more could B. allege in an answer, or set forth in an affidavit of merits, than that he never entered into such a contract with A., that A. never performed any labor for him, and that he is not indebted to A. in the sum alleged or in any other sum? True, all of his statements would be denials, but those denials would constitute a complete answer, and therefrom the court could readily determine just what defense B. would make, and whether he had a meritorious defense to the action.

The affidavit is faulty, in that it contains the phrase above quoted. Why that phrase was incorporated in the affidavit is not apparent, as it appears from other parts of the record that the defendant would defend, if permitted to do so, on the ground that plaintiff was never employed by the defendant company, but, if employed at all, such employment was by one Stebbins, former president of the company, personally, in matters not connected with the defendant. The first phase of the above statement is pregnant with the admission that plaintiff may have worked for defendant at some time other than that stated in the complaint, but the denial of indebtedness based upon service is positive and complete, and negatives the idea that plaintiff was employed by defendant at any time at an agreed compensation or otherwise. The showing made is sufficient.

The judgment is reversed and the cause remanded to the district court of Cascade county, with direction to set aside the default entered and to permit the defendant to answer to the merits.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.