RICHARD A. WORSTELL AND WILDA ANN WORSTELL, PLAINTIFFS AND RESPONDENTS, *v.* K. M. DeVINE, DEFENDANT AND APPELLANT.

No. 9775.

Submitted Jan. 21, 1959. Decided Feb. 11, 1959.

335 Pac. (2d) 305.

Richard B. Conklin, Great Falls, for appellant.

Richard B. Conklin, Great Falls, argued orally for appellant.

William F. Browning, Orville Gray, Great Falls, for respondents.

William F. Browning and Orville Gray, Great Falls, argued orally for respondents.

MR. JUSTICE CASTLES:

This is an appeal from an order denying a motion to set aside a default judgment under the provisions of R.C.M. 1947, sec. 93-3905.

On May 15, 1956, respondents, plaintiffs below, filed a complaint to foreclose a contract for the sale of real property. Prior to the filing of the complaint, it appears from an Exhibit attached to the complaint that a notice was given by the respondents to the appellant, defendant below, on April 11, 1956, that she was in arrears under the contract and unless such indebtedness was paid her contract was forfeit. The summons and copy of the complaint was served on the appellant on May 17, 1956, and on June 7, 1956, the 21st day after service of process, the appellant's default was entered for failure to appear. On June 19, 1956, judgment by default was entered. On June 22, 1956, the appellant served and filed a notice of motion to vacate and set aside the default and decree. With this notice, appellant's counsel filed an affidavit, setting forth that the summons and complaint were delivered to his office by the appellant, his client, during his absence on May 21, 1956; that he did not

thereafter contact his client, since he had become familiar with the facts of the case during the previous year while another action was pending between the same parties for the same cause; that he believed that process was served on appellant the same day that the papers were delivered to his office; and that he did not discover his mistake as to the date of service until after the default was entered.

At the same time the appellant served and filed a proposed answer and counterclaim containing admissions and denials and alleging another action pending between the same parties for the same cause; that respondents breached the contract themselves by failing to execute a warranty deed to appellant; that appellant was induced to enter into the contract by the false and fraudulent representations and concealments of respondents; and other matters. The proposed answer and counterclaim seeks rescission of the contract, return of the money paid by appellant to respondents, and reimbursement for improvements made by appellant.

Upon the hearing of the motion to set aside the default, July 11, 1956, respondents did not file any affidavits or present any evidence in opposition to the motion. The district court denied the motion on September 10, 1956, by an order from which this appeal is taken.

But one specification of error is urged. It is that the district court erred and abused its discretion by refusing to relieve appellant from the default judgment taken against her through mistake, inadvertence, surprise, or excusable neglect.

The appellant urges that her counsel's mistaken belief that service was made the same day that she delivered the papers to his office in his absence was excusable neglect.

The respondents' argument is two-fold. First that under the circumstances such a mistake is not excusable neglect; and second, that even so, a meritorious defense is not shown.

The statutory basis for the motion and this appeal from the order denying the motion is R.C.M. 1947, sec. 93-3905, in part providing that the ''court * * * may, also, upon such terms as

may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; provided, that application therefor be made within reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken."

The application of this statute to relief from default judgments has been before the court many times. The most recent pronouncement being in Holen v. Phelps, 131 Mont. 146, 308 Pac. (2d) 624. Certain familiar rules were reviewed in that case. Quoting from Reynolds v. Gladys Belle Oil Co., 75 Mont. 332, 340, 243 Pac. 576, 579, the court stated: "However, since, 'it is the policy of the law to have every litigated case tried on its merits,' judgments by default are not favored. [Citing cases.] In furtherance of justice, trial courts should, in applying the above statute to a given case, maintain and exercise that liberal spirit which prompted the Legislature to grant them this discretionary power, and, while this court will disturb the action of a trial court in opening default only in exceptional cases, 'no great abuse of discretion by the trial court in refusing to set aside a default need be shown to warrant a reversal.' [Citing cases.]"

In view of these pronouncements, we shall examine whether the actions of counsel for appellant are such as to be considered excusable neglect. A review of Montana cases indicates that this court has considered varying shades of neglect as excusable.

In the early case of Nash v. Treat, 45 Mont. 250, 253, 122 Pac. 745, 746, Chief Justice Brantly observed: "While the courts should adhere to the rule that a party who has suffered a default ought not to have relief except upon showing a substantial excuse for his apparent neglect because the adverse party is *prima facie* justly entitled to the advantage which he has secured by the default, yet they should not indulge in refined distinctions or assign importance to matters of form, which might result in a denial of justice. Each case must be determined upon its own facts; and, when the motion is made

promptly and is supported by a showing which leaves the court in doubt or upon which reasonable minds might reach different conclusions, the doubt should be resolved in favor of the motion. [Citing cases.]''

We think that reasonable minds might differ in their conclusions of the instant case and therefore resolve the doubt in favor of a trial on the merits. The attorneys for each side live and office in the same city. They knew of the activities of each other in behalf of their clients, as it appears from the record that another case between the same parties in the same cause of action, with the same counsel, was pending. Appellant's counsel's excuse for his neglect was, that he assumed the papers were served on his client that same day. Surely such an assumption is neglect. It appears from the affidavit that the assumption of the date of service was an honest mistake—and not one dreamed up to excuse the neglect. We hold that a sufficient showing was made of excusable neglect. See Patterson v. Patterson, 120 Mont. 127, 179 Pac. (2d) 536; Madson v. Petrie Tractor & Equipment Co., 106 Mont. 382, 77 Pac. (2d) 1038; Reynolds v. Gladys Belle Oil Co., 75 Mont. 332, 243 Pac. 576; Greene v. Montana Brewing Co., 32 Mont. 102, 79 Pac. 693; Voelker v. Golden Curry Consol. Min. Co., 40 Mont. 466, 107 Pac. 414; Pengelly v. Peeler, 39 Mont. 26, 101 Pac. 147.

For cases holding neglect inexcusable see Vadnais v. East Butte Extension Copper Mining Co., 42 Mont. 543, 113 Pac. 747; Scilley v. Babcock, 39 Mont. 536, 104 Pac. 677; Pacific Acceptance Corp. v. McCue, 71 Mont. 99, 228 Pac. 761; Robinson v. Petersen, 63 Mont. 247, 206 Pac. 1092.

In Eder v. Bereolos, 63 Mont. 363, 371, 207 Pac. 471, 473, a case decided in 1922, the court remarked as follows:

''Fifty-two decisions of this court, construing the provisions of the Code involved in this case, have been examined, and it is worthy of note that in only six of these have the decisions of the district courts in setting aside defaults been reversed, because of the insufficiency of the showing of excusable neglect. They are: Thomas v. Chambers, 14 Mont. 423, 36 Pac. 814;

Chambers v. City of Butte, 16 Mont. 90, 40 Pac. 71; Scilley v. Babcock, 39 Mont. 536, 104 Pac. 677; Pearce v. Butte Electric Ry. Co., 40 Mont. 321, 106 Pac. 563; Lovell v. Willis, 46 Mont. 581, 129 Pac. 1052, 43 L.R.A.,N.S., 930, Ann. Cas. 1914B, 587; and Robinson v. Petersen [63 Mont. 247], 206 Pac. 1092.''

We observe that since 1922, the cases we have studied indicate that the decisions turn on promptness and diligence in moving to set aside the default and on whether or not a showing of a meritorious defense is made.

This court has been hesitant to impute the neglect of an attorney to his client; and has been loathe to permit this neglect to bar a hearing on the merits. Whether or not the varying shades of excusable neglect previously remarked on can be distinguished, we choose to think that where reasonable minds might differ in their conclusions of excusable neglect, the doubt should be resolved in favor of a trial on the merits.

Having held that excusable neglect existed on the showing of the appellant, we find a slight abuse of discretion by the trial court in denying the motion to set aside the judgment.

Respondent contends, that even so, there must be a meritorious defense shown. This is the rule. See Holen v. Phelps, supra, 131 Mont. 146, 308 Pac. (2d) 624, and cases cited therein. It is further the rule that the showing of a meritorious defense cannot be controverted. Holen v. Phelps, supra.

We have examined the proposed answer and find that *prima facie* it does set up a defense. We do not feel it apropos to discuss the merits of the answer since that matter will be better handled by the standard methods of testing in the district court by demurrer, motion, reply or otherwise.

For the foregoing reasons the order of the district court is reversed, the default set aside and the appellant permitted to file his answer.

MR. JUSTICES BOTTOMLY and ANGSTMAN, concur.
MR. JUSTICE ADAIR, specially concurring:

I concur in the reversal of the trial court's order from which

this appeal was taken and in the setting aside and vacating of the default taken and entered against the defendant.

Counsel for plaintiffs and counsel for defendant all reside and maintain their law offices in Great Falls, Montana. While the dignity and importance of the Profession of the Law, in a public point of view can hardly be over estimated, yet nothing is more certain than that one engaged in the active practice of law will find, in the long run, the good opinion of his brothers in the profession of far greater importance than that of the general public at large, for it is there among his fellow lawyers that the foundation of the reputation of every truly great lawyer will be discovered to have been laid.

In Sharswood's "Professional Ethics," 5th Ed., published by the American Bar Association, 1907, at pp. 73 to 75, it is said:

"A very great part of a man's comfort, as well as of his success at the Bar, depends upon his relations with his professional brethren. With them he is in daily necessary intercourse, and he must have their respect and confidence, if he wishes to sail along in smooth water. * * * 'Whoso diggeth a pit,' says the wise man, 'shall fall therein, and he that rolleth a stone, it will return upon him.' If he should succeed, he will have gained with his success not the admiration and esteem, but the distrust and dislike of one of his associates as long as he lives. He should never unnecessarily have a personal difficulty with a professional brother. * * * Let him shun most carefully the reputation of a sharp practitioner. Let him be liberal to the slips and oversights of his opponent wherever he can do so, and in plain cases not shelter himself behind the instructions of his client. The client has no right to require him to be illiberal—and he should throw up his brief sooner than do what revolts against his own sense of what is demanded by honor and propriety. * * * The good opinion and confidence of the members of the same profession, like the King's name on the field of battle, is a 'tower of strength'; it is the title of legitimacy."

Be not too ready to demand your "pound of flesh" even though under the law, it may be your due.

Be not too hasty in taking the default of a litigant represented by counsel, nor too tenacious in hanging on to such an advantage once gained. Next time it may be your client who is in default and you may be the petitioner for relief.

THE HONORABLE VICTOR H. FALL, District Judge, dissenting:

Regretfully I find it necessary to dissent from the majority opinion. The reasons are twofold. First, because this appeal appears to me to come squarly within the rule laid down in Robinson v. Petersen, 63 Mont. 247, 260 Pac. 1092, and which case, while it has not always been carefully followed, has never been reversed by this court. Secondly and more important, it appears to me that the proposed answer filed by the appellant at the time of the motion to set aside the default wholly fails to set forth any bona fide or valid defense to the original action.

The ''defaulted party must show that he has a defense, otherwise the court cannot determine whether justice will be promoted or retarded by setting aside the default.'' Holen v. Phelps, 131 Mont. 146, 150, 308 Pac. (2d) 624, 627, and cases cited therein.

The record before us discloses that the appellant took possession of the respondents' real property on or about May 1, 1952, under a contract of purchase that called for payments of $135 per month. The respondents' complaint alleges a default of the contract of purchase and sets out as an exhibit to the complaint a record of the payments made. The first default was for the month of October 1954, and in 1955 appellant made payments of $135 in February, March and May and an additional payment of $65 in this same month of May. No other payments have ever been made. The insurance premiums have not been paid nor the taxes as required by the contract. On April 11, 1956, the vendor respondents served written notice upon the purchaser, of the default, and demanded either that the default in payments be cured or that possession of the property be restored. The notice was full and complete and attached thereto was the list

of the payments that had been made. On May 15, 1956, suit was filed to foreclose the contract and recover possession of the property. *None of the essential allegations of the plaintiffs' complaint above set forth are denied in the defendant's proposed answer.* The proposed answer contains four separate defenses, the first being that another action is now pending. If this should be the case, it should be raised by special demurrer and not by answer. The other three affirmative defenses are all in substance based upon a charge of misrepresentations on the part of the sellers. These charges of misrepresentations amount to the following: that the defendant agreed to pay too much for the property in the first place as it was worth only $10,000 instead of the $17,000 as contracted for; that the roof leaked; that some portions of the property were in a bad state of repair; that the property was "not in good and tenantable condition"; that the sellers knew all these things and misrepresented them to the purchaser; and that the buyer was entitled to rely upon such representations because he, the buyer, "had no opportunity to inspect the roofs, etc.", and that he "had no experience in buying real property."

To give probative force to the sort of answer set up here by the defendant taxes my credulity too far. The purchaser has occupied this property since May 1, 1952, and presumably still does. On June 22, 1956, over four years after taking possession and some twenty months after the first default in the contract, and after default of appearance in the case now on appeal this court is asked to permit the suit to be tried "on its merits," with the foregoing as a defense. I do not subscribe to the doctrine that courts should be as blind as Justice is usually depicted as She hold the scales of the law. The law aids the vigilant. R.C.M. 1947, sec. 49-119.

It seems appropriate here to quote an observation of Dr. Borchard appearing in the preface of his Second Edition of Declaratory Judgments on page VIII, where he says: "* * * many members of the bench and bar not unnaturally acquire the view that the technicalities characterize the profession and

the system, and that they exist for the delectation and benefit of the votaries of the priesthood itself; they are inclined to forget that both bench and bar are merely servants of the people, the better to enable the administration of justice to be [speedily] accomplished."

And also it is to be noted that, "Law is an intensely practical affair. Regardless of the height of abstraction or idealism from which it issues, it must come to earth and walk with men who act and work before it becomes a living reality. * * *

"The meaning of the law proves to be not that which was decreed in the cloisters of draftsmen, professors or the writers of texts [or even in opinions of appellate courts] but that which is wrought in everyday, down-to-earth experience, in the effort of practical folk to apply the law to actualities." 1 Cal. J.I.C. 223.

I would affirm the court below and refuse to set up another monument to the long delays of which we have entirely too many in the history of the law.