No. 84-141

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

MERLIN L. LORDS and JUDY LORDS,

Plaintiffs and Respondents,

-vs-

JOSEPHINE J. NEWMAN, W.D. WEBB
and IDA MAY WEBB,

Defendants and Appellants.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flahtead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Murray, Kaufman, Vidal & Gordon, Daniel W. Hileman,
Kalispell, Montana

For Respondents:

Brian J. Smith, Polson, Montana

Submitted on Briefs:   June 28, 1984

Decided:   September 19, 1984

Filed:   SEP 19 1984

_Ethel M. Harrison_

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The defendants appeal from a default judgment entered by the Flathead County District Court.

Appellant, Josephine Newman, purchased the San Rose Motel near Kalispell, Montana, from the plaintiffs in April 1982. Part of the purchase price was a $10,000 promissory note executed by Newman and her parents, W. D. Webb and Ida May Webb. Newman made one monthly payment on the note. When the second payment came due, she deducted the cost of repairing certain items at the motel and sent a check for the difference to the sellers. The Lords rejected the payment, and the present action for collection was filed in Lake County June 15, 1983.

W. D. Webb was served with a summons and complaint on July 15, 1983. Ida Webb and Newman were never served. Newman did learn of her father's service and brought his copy of the complaint to Lee Simmons, an attorney she had previously consulted concerning the collection dispute.

At her meeting with Simmons, Newman made it clear that neither she nor her mother had been served with process. Newman also did not authorize Simmons to represent her in the matter. Her request was that Simmons take care of the matter for her father.

Despite the meeting with Newman, Lee Simmons made a general appearance on behalf of all three defendants on August 5, 1983, when he filed motions to dismiss and change venue. This was the first and final act taken by Simmons in the case. Unknown to the defendants, Simmons ceased practicing law in August 1983 and essentially disappeared from sight. Opposing counsel consented to Simmons' motion to

change venue to Flathead County. As Simmons could not be located, the plaintiffs paid the defendants' filing fee to effect the change of venue. Although the action was transferred to Flathead County, the default of Ida Webb was entered in Lake County October 4, 1983. This default was later set aside on the parties' stipulation.

Proceeding in Flathead County, the plaintiffs filed a notice of intent to take default on November 30, 1983. This notice was mailed to Simmons without response. The defendant Newman also attempted to contact Simmons to check on the progress of the case. The defendants were unaware that the plaintiffs were seeking default. The clerk of the court entered default against Newman and W. D. Webb on December 6, 1983.

The defendants first learned that Simmons had entered an appearance on their behalf when a title insurance report indicated that a default had been entered against them. On December 20, 1983, defendants retained new counsel and filed a motion to set aside the entry of default. This motion was heard on January 19, 1984, and on January 24, 1984, the court denied the motion. Judgment was entered February 2, 1984, and the court certified the judgment as a final judgment under Rule 54(b), M.R.Civ.P., for purposes of appeal.

A motion to amend the judgment was made by defendants' counsel on February 15, 1984. The court at the January hearing expressed a reluctance to set aside the default because this action might prejudice a future malpractice action against Simmons. The motion to amend was based on the defendants' discovery that Simmons carried no malpractice insurance, the potential claim was not covered by the client security fund and Simmons had no property from which to

3

satisfy a judgment. The District Court failed to rule upon the motion, and it was deemed denied on March 9, 1984. On March 16, 1984, defendants filed their notice of appeal.

The primary issue raised by appellants is whether the District Court erred in denying the motion to set aside the entry of default.

## Standard of Review

Of first importance is determining what standard of review should be applied in this case. The task is complicated by the fact that the parties have cited recent decisions of this Court in which diametrically opposed standards were applied in similar default situations.

The appellants assert that "no great abuse" of discretion by the trial court need be found before a decision can be reversed. Language from our decisions in Kootenai Corp. v. Dayton (1979), 184 Mont. 19, 601 P.2d 47, and Little Horn State Bank v. Real Bird (1979), 183 Mont. 208, 598 P.2d 1109, is cited in support of their proposition.

The respondents claim that "manifest abuse" must be shown before the action of the trial court can be disturbed. They cite our decisions of Schmidt v. Jomac, Inc. (Mont. 1982), 639 P.2d 517, 39 St.Rep. 130, and Purington v. Sound West (1977), 173 Mont. 106, 566 P.2d 795, and language therein in support of their "manifest abuse" standard.

Examining the four above-cited cases and their underlying precedent, we discern that the apparent confusion over the proper standard of review is not solely a contemporary phenomenon. The standard has been variously described over the years. However, the sometimes contradictory statements

4

in the case law may be reconciled so that a coherent approach emerges for the review of default judgments.

An underlying concern to any review of default is that every litigated case should be tried on the merits and that judgments by default are not favored. This principle has been enunciated in practically all of our decisions addressing the issue and is the cornerstone of appellate review of default.

A second principle that constantly appears in our case law is that trial courts are vested with a certain amount of discretion when they are considering a motion to set aside a default. It has been stated that these matters are within the "sound discretion" of the trial court.

Two harmonious standards of review have emerged from this Court's attempt to observe the guiding principles of review on motions to set aside a default. Whether one or the other standard of review is used depends on what action the trial court took with the motion.

The first standard properly arises in instances when a trial court has granted the motion to vacate the default and opened up the action for trial on the merits. In these circumstances, the public policy considerations of letting the parties have their day in court and respecting the trial court's sound discretion combine synergistically to justify a strict standard of review: the action of the trial court will only be set aside upon a showing of manifest abuse. Decisions in our case law representative of this approach are Kosonen v. Waara (1930), 87 Mont. 24, 285 P. 668, and Eder v. Bereolos (1922), 63 Mont. 363, 207 P. 471. An alternative manner of articulating this strict standard has been that an order setting aside default will be reversed only in

5

exceptional cases. McClurg v. Flathead Cty. Com'rs (Mont. 1980), 610 P.2d 1153, 37 St.Rep. 801; see also, Kootenai, supra; Holen v. Phelps (1957), 131 Mont. 146, 308 P.2d 624.

The second standard of review arises where a trial court has considered but denied a motion to set aside the default. In these instances the reviewing court weighs the conflicting concerns of respecting the trial court's sound discretion while recognizing the policy favoring trial on the merits. The resulting standard of review is that no great abuse of discretion need be shown to warrant reversal. Cases representative of this standard are Strnod v. Abadie (1962), 141 Mont. 224, 376 P.2d 730; Cure v. Southwick (1960), 137 Mont. 1, 349 P.2d 575; Waggoner v. Glacier Colony of Hutterites (1953), 127 Mont. 140, 258 P.2d 1162; Reynolds v. Gladys Belle Oil Co. (1926), 75 Mont. 332, 243 P. 576; and Brothers v. Brothers (1924), 71 Mont. 378, 230 P. 60. An alternative expression of this "no great abuse" standard is that only "slight abuse" is sufficient to reverse an order refusing to set aside a default. See, Madson v. Petrie Tractor & Equipment Co. (1938), 106 Mont. 382, 77 P.2d 1038.

Finally there are cases that recognize both standards of review and simply state that a stronger showing of abuse need be made to warrant reversal where a trial court has opened a default than where it has refused to do so. See for example, Beadle v. Harrison (1920), 58 Mont. 606, 194 P.2d 134. Other jurisdictions have examined results and noted that an appellate court is more likely to affirm a lower court ruling setting aside a default judgment than affirm a refusal to do so. Franklin v. Bartsas Realty, Inc. (1979), 95 Nev. 559, 598 P.2d 1147; Paulsen v. Continental Porsche Audi, Inc. (1980), 49 Or.App. 793, 620 P.2d 1384; Griggs v.

Averbeck Rlty., Inc. (1979), 92 Wash.2d 576, 599 P.2d 1289.

One treatise has succinctly stated this observation by

noting:

> "An appellate court, owing to the remedial character of the statutes and the policy of applying them liberally to permit an opportunity to present a substantial defense where that right would otherwise be lost, listens somewhat more readily to an appeal from an order denying relief than to one granting relief. While it will usually sustain the action of the court below, whether for or against the motion--even though upon the same state of facts it would have sustained an opposite conclusion--it is much more disposed to affirm an order when the result is to compel a trial upon the merits than it is when the judgment has been allowed to stand and it appears that a substantial defense could be made. This explains what might otherwise seem to be a conflict in some of the decisions." 1 Freeman on Judgments (5th ed.), § 291 at 579.

Presently there does appear to be a conflict in some of

our decisions. The apparent conflicts have stemmed from the

inadvertent paraphrasing of the two standards of review

without regard to whether the trial court granted or denied

the motion. For example, in _Schmidt_, supra, the majority

simply noted:

> ". . . A manifest abuse of discretion must be shown before this Court will interfere with the trial court's discretion on a motion to set aside a default judgment. Purington v. Sound West (1977), 173 Mont. 106, 566 P.2d 795; Keller v. Hanson (1971), 157 Mont. 307, 485 P.2d 705; Johnson v. Matelich, supra." 639 P.2d at 520.

In _Schmidt_, and the cited cases with the exception of _Keller_,

the Supreme Court was not reviewing an action where a trial

court had granted a motion to set aside a default.

As our discussion has indicated, there is no one set

standard of review to be applied. The degree of appellate

7

scrutiny depends on whether the trial court set aside the default or refused to do so. To the extent that Schmidt, Purington, Keller, Johnson and other decisions indicate that the "manifest abuse" standard is to be applied in all cases, these decisions must be clarified. Manifest abuse need only be shown where the trial court has set aside a default judgment and the appellant requests that the default be reinstated.

In a case as the present one, where the trial court has refused to set aside the default, the proper standard of review is that no great abuse of discretion need be shown to warrant reversal. Reaching this conclusion, we turn to the merits of the appellants' arguments. It is clear that the issue of abuse of discretion must be decided on a case-by-case basis. Kootenai, supra; Brothers, supra.

## Neglect As Grounds For Setting Aside Default

Appellants argue that the default should be set aside because Newman was not properly served with process and the attorney Simmons neglected his duties. Defective service of process in this case is a subsidiary issue to the alleged neglect. Due to the nature of our decision, the subissue need not be reached. Simmons made a general appearance on behalf of all the appellants and the main thrust of their argument is the neglect of the case from that day forward.

Appellants technically are appealing both the refusal of the trial court to set aside the entry of default made December 6, 1983, and the default judgment filed February 2, 1984. Rule 55(c), M.R.Civ.P., states in relevant part:

> "For good cause shown the court may set
> aside an entry of default and, if a
> judgment by default has been entered, may

> likewise set it aside in accordance with
> Rule 60(b) . . . ."

Rule 60(b), M.R.Civ.P., provides:

> "On motion and upon such terms as are
> just, the court may relieve a party or
> his legal representative from a final
> judgment, order, or proceeding for the
> following reasons:
>
> "(1) Mistake, inadvertence, surprise, or
> excusable neglect . . . ."

Thus, the question before us is whether the District Court erred when it found that the neglect of Simmons was not good cause or excusable neglect for setting aside the default.

The general rule followed in Montana and many other jurisdictions is that the neglect of an attorney is attributable to the client. The attorney's neglect is imputed to the client and is insufficient by itself to set aside a default. First State Bank v. Larsen (1925), 72 Mont. 400, 233 P. 960.

Within our case law, however, there are numerous instances where an attorney's neglect has been excused upon the proper showing. See for example, Worstell v. Devine (1959), 135 Mont. 1, 335 P.2d 305; Reynolds, supra; Eder, supra. In Worstell, this Court thoroughly reviewed neglect cases and offered the following explanation for the exceptions:

> "This court has been hesitant to impute
> the neglect of an attorney to his client;
> and has been loathe to permit this ne-
> glect to bar a hearing on the merits.
> Whether or not the varying shades of
> excusable neglect previously remarked on
> can be distinguished, we choose to think
> that where reasonable minds might differ
> in their conclusions of excusable ne-
> glect, the doubt should be resolved in
> favor of a trial on the merits." 335
> P.2d at 307.

In the case at bar, Simmons' actions do not constitute mere bungling of his duties or ineffective representation. Simmons totally abandoned his clients and disappeared from

sight. To add insult to injury, before disappearing, Simmons made a general appearance on behalf of the clients who had neither been served with process nor authorized him to so act.

Under these circumstances we find it unconscionable to apply the general rule charging the client with the attorney's neglect. Newman in her testimony indicates that reasonable attempts were made to check on the progress of the case. Where an attorney's failure to represent a client constitutes actual misconduct, the client should be granted relief from default.

Our reasoning here is in tune with several other jurisdictions that have developed an exception to the general rule imputing neglect. For example, Nevada and California both recognize the exception. Orange Empire National Bank v. Kirk (1968), 259 Cal.App.2d 347, 66 Cal.Rptr. 240; Daley v. County of Butte (1964), 227 Cal.App.2d 380, 38 Cal.Rptr. 693; Staschel v. Weaver Bros., Ltd. (1982), ___ Nev. ___, 655 P.2d 518. California has narrowed its exception by requiring a showing of positive misconduct by which the client has been effectively and unknowingly deprived of representation. Carroll v. Abbot Laboratories (1982), 32 Cal.3d 892, 187 Cal.Rptr. 592, 654 P.2d 775. Nevada recognizes actual misconduct by the attorney as grounds for granting a client's motion to vacate default.

Examining the factual circumstances of this case we hold that the total abandonment of the clients' interests by attorney Simmons constituted good cause for setting aside the entry of default by the District Court on December 6, 1983. The record indicates that the appellants acted promptly by filing their motion to set aside the default fourteen days

later on December 20, 1983. The record also discloses that the defendants may have had a meritorious defense to the collection action; certain equipment at the motel that was represented as being in good condition by the sellers was alleged by the defendants to be in a state of disrepair. Finally, the respondents have failed to demonstrate how the setting aside of this default would prejudice their cause of action.

The District Court judge in this case was motivated in part by his fear that granting the motion to vacate the default would compromise a future malpractice action against the real culprit in the controversy--the attorney Simmons. While such concern is laudable, the adequacy of a malpractice remedy in this situation is questionable. Even assuming the clients would prevail in such an action, Simmons' lack of malpractice insurance and personal assets would make the victory a decidedly hollow one.

Summarizing our analysis, we conclude that the trial court abused its discretion by failing to set aside a default in a situation where the defendants were completely abandoned by their attorney, preceded with diligence to rectify the court's action and alleged a potential defense to the action. The litigants in this case were blameless and should not be penalized for misconduct attributable to a lawyer.

The default and default judgment are vacated, and the case remanded to the District Court for further proceedings.

_____
Chief Justice

We concur:

_John Conway Harrison_

_W. C. Gulbrandson_

_John C. Sheehy_

_Daniel J. Shea_
Justices