No. 97-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 37N

NORMAN NELSON,

      Plaintiff and Respondent,

v.

ELNORA A. OLD COYOTE
and JOHN WINSTON WRIGHT,

      Defendants and Appellants.



FILED

FEB 24 1998

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Joseph M. Bradley, Bradley Law Office, Laurel, Montana

      For Respondent:

          Carolyn S. Parker, Bowen & Parker, Bozeman, Montana

Submitted on Briefs: December 18, 1997

Decided: February 24, 1998

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 This is an appeal from the Eighteenth Judicial District Court's Order and Memorandum entered January 28, 1997, denying a motion for relief from defaults and default judgment filed by Elnora A. Old Coyote and John Winston Wright (Appellants) pursuant to Rules 55(c), 60(b)(1) and 60(b)(3), M.R.Civ.P. We affirm.

**Background**

¶3 On April 15, 1996, Norman Nelson (Nelson) filed his complaint in District Court seeking to quiet title to a tract of land in Gallatin County on which he was residing. He pleaded theories of adverse possession, fraud, breach of contract, undue influence, unjust enrichment, deceit, moral obligation and he claimed damages. At the same time, Nelson also filed his application for a preliminary injunction and for a temporary restraining order. These various pleadings were duly served on the Appellants. The Hon. Larry W. Moran, District Judge, now retired, set a hearing on the application for injunctive relief for April 29, 1996. This date was continued. On May 7, 1996, however, Appellant Old Coyote and Nelson entered into and filed an agreement as to the restraining order. Attorney John Bradley

2

appeared for Appellant Old Coyote in conjunction with this agreement and filed an unsupported Rule 12(b)(6), M.R.Civ.P. motion to dismiss Nelson's complaint on May 8, 1996. Attorney Bradley also appeared for Appellant Wright by filing a similar motion to dismiss on June 13, 1996.

¶4 Judge Moran denied Appellant Old Coyote's motion to dismiss on June 6, 1996, and granted her 20 days in which to further plead. On June 24, 1996, Nelson filed his motion requesting that the court deny Appellants' motions to dismiss noting that they had been granted two extensions of time in which to plead. Attorney Bradley was served by mail with this response. Appellants did not respond to this motion. However, the record does not reflect that any "extensions" to plead, other than the two unsupported motions to dismiss, were requested by Appellants or granted by the court. In any event, Wright's motion to dismiss was denied on June 26, 1996. In this order, Judge Moran required that "Defendants shall file *Answer* or otherwise plead by July 10, 1996." On July 23, 1996, the court entered an amended order for preliminary injunction. Counsel of record were served by mail. On August 1, 1996, Nelson's counsel filed a *lis pendens*; this document indicates that, in addition to the Clerk and Recorder, copies were directed to Appellants.

¶5 Appellants having failed to answer or file any further appearances in the lawsuit, on August 8, 1996, Nelson filed his Rule 55(b)(2), M.R.Civ.P. motion for entry of default judgment. This motion was supported by a brief and was served by mail on counsel for Appellants. The motion requested that Nelson be granted ownership of a 180' x 180' portion

3

of the real property described in the complaint on which his house is located; that he receive an unencumbered conveyance of such property by valid deed based on a survey which he would obtain; that he be granted his attorney's fees and costs; and that he be granted other relief deemed proper. By minute order dated August 14, 1996, the clerk set a hearing on this motion for September 9, 1996, at 9:00 am. The record reflects that the clerk mailed a copy of this minute order by certified mail to Attorney Bradley and that the order was received on August 30, 1996. The initials "JMB" appear on the certified-mail receipt card. Appellants did not timely file any written opposition to Nelson's motion for default judgment, nor did they appear either personally or by counsel at the September 9, 1996 hearing on the motion.

¶6 At the hearing, Nelson presented sworn testimony in support of his complaint. Following the hearing, Judge Moran granted Nelson's motion and ordered that default judgment be entered against Appellants granting and conveying to Nelson, by valid deed and following the survey, an unencumbered title to the 180' x 180' parcel. Nelson was also awarded his attorney's fees and costs. Counsel of record were served by mail with this order. On October 7, 1996, the court entered a decree quieting title, ordered a survey and appointed the clerk of court as a special master to convey the real property to Nelson. Again, counsel of record were served by mail with this document. On November 1, 1996, counsel for Nelson filed a notice to the court indicating that a preliminary survey had been completed and had been presented to the court for approval along with an attached letter from the surveyor. Attorney Bradley was served by mail with a copy of this notice.

4

¶7 On November 29, 1996, Appellants, by Attorney Bradley, entered their first appearance in the suit since the June motions to dismiss were filed. Appellants filed their motion for relief from defaults and default judgment under Rules 55(c), 60(b)(1) and 60(b)(3), M.R.Civ.P. The motion was supported by a brief and the affidavits of Appellants and four other persons. On December 3, 1996, Nelson's counsel filed notice of entry of the October 7, 1996 decree and a notice to the court and affidavit of fees; she served these documents by mail on counsel for Appellants. By minute order dated December 9, 1996, the clerk of court set a hearing on Appellants' motion for relief from defaults and default judgment for January 15, 1997, at 9:00 am. Counsel of record were served by mail. Appellants filed objections to Nelson's bill of costs and attorney's fees (December 9, 1996); a motion for stay (December 9, 1996); a notice of hearing (December 13, 1996); and another affidavit (January 14, 1997). On December 11, 1996, Nelson filed his objection to the motions for stay and for relief from defaults and default judgment. Counsel of record served each other by mail with these various documents.

¶8 Appellants' motions for relief from defaults and default judgment and for stay were heard on January 15, 1997, by the Hon. Mike Salvagni, Judge Moran's successor in office. Nelson and Old Coyote testified; Wright did not attend the hearing; counsel for the parties offered argument. With leave of the court, Nelson filed an amended response to Appellants' motion for relief from defaults and default judgment and a supporting hearing brief on January 21, 1997. Appellants filed two supplemental briefs in support of their motion

5

(January 24 and 27, 1997). The court entered its Order and Memorandum on January 28, 1997, denying Appellants relief. Appellants timely filed their notice of appeal from the court's order denying their motion for relief from defaults and default judgment.

## Issue

¶9 The sole issue on appeal is whether the District Court abused its discretion in denying Appellants' motion for relief from defaults and from default judgment. We hold that the court committed no abuse of discretion under the facts and procedural background of this case.

## Discussion

¶10 Rule 55(c), M.R.Civ.P., provides in relevant part:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Our standard of review of a district court's refusal to set aside default is whether there was a slight abuse of discretion by the court. Waldher v. F.D.I.C. (1997), 282 Mont. 59, 62, 935 P.2d 1101, 1103 (citing Twenty-Seventh Street, Inc. v. Johnson (1986), 220 Mont. 469, 471, 716 P.2d 210, 211). In this case, however, Appellants did not file their Rule 55(c) motion until after default judgment had been entered against them. As we stated in Karlen v. Evans (1996), 276 Mont. 181, 915 P.2d 232:

> As a general rule, cases are to be tried on their merits and judgments by default are not favored. Maulding v. Hardman (1993), 257 Mont. 18, 23, 847 P.2d 292, 296 (citing Lords v. Newman (1984), 212 Mont. 359, 363, 688 P.2d 290, 293). If the trial court refused to set aside the judgment, then only a slight

6

abuse of discretion need be shown to warrant reversal. <u>Lords</u>, 688 P.2d at 293. If the trial court has set aside the judgment and the appellant requests that the judgment be reinstated, then a manifest abuse of discretion must be shown to warrant reversal. <u>Lords</u>, 688 P.2d at 293.

<u>Karlen</u>, 276 Mont. at 185, 915 P.2d at 235. Since, in the instant case, the District Court refused to set aside the default judgment, our discussion will center on whether Appellants have demonstrated a slight abuse of discretion on the part of the District Court which would, therefore, warrant reversal.

¶11 Appellants ground their Rule 55(c) motion in Rules 60(b)(1) and 60(b)(3), M.R.Civ.P. Rule 60(b)(1) allows the court to relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(3) allows the court to grant this same relief on the basis of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." A party seeking to set aside a default judgment must show both a good cause for doing so under Rule 60(b), M.R.Civ.P., and the existence of a meritorious defense. <u>Maulding</u>, 257 Mont. at 23, 847 P.2d at 296 (citing First Nat. Bank of Cut Bank v. Springs (1987), 225 Mont. 62, 67, 731 P.2d 332, 335).

¶12 In ruling on their motion, the District Court considered Appellants' Rule 55(c) motion first in the context of Rule 60(b)(1) and then, separately, in the context of Rule 60(b)(3). With regard to the former, the court ruled that the Appellants missed three filing deadlines. The court observed that on June 6, 1996, Appellant Old Coyote's motion to dismiss was denied and that she was given 20 days to further plead. She failed to do so. In the meantime,

7

Appellant Wright filed his motion to dismiss on June 13, 1996, and this motion was denied on June 26, 1996. Both Appellants were given until July 10, 1996, to further plead and, as the court correctly noted, the Appellants did nothing.

¶13 The court next pointed out that on August 8, 1996, Nelson filed his motion and brief for entry of default judgment. Notice of the September 9, 1996 hearing was served upon Appellants' counsel by certified mail. Appellants did not respond to the motion and did not appear at the hearing. Both the order directing that default judgment be entered against Appellants filed on September 9, 1996, and the decree quieting title to the subject property filed on October 7, 1996, were served by mail upon counsel of record. Once again, Appellants did nothing further. They finally filed their Rule 55(c) motion on November 29, 1996--more than four and one-half months after the July 10, 1996 date on which they were ordered to answer or otherwise plead.

¶14 The court noted that in their brief in opposition to the default judgment, Appellants' counsel advised that he was absent from his law office for much of the months of July and August 1996 due to illness. Counsel further pointed out that he is a sole practitioner who operates his law office without a secretary or receptionist. Moreover, he claimed that during his illness mail addressed to him was picked up from the post office by other persons, including relatives and friends. Nonetheless, the court found that at the hearing on Appellants' motion to set aside the default judgment, Attorney Bradley did not provide the court with any reasons why his illness was so severe that he could not look at his mail or

calendar hearings for two months. The court noted that Appellants' counsel did not present any medical evidence to substantiate his illness claim, nor did he request any continuances due to illness during the progress of the case. Moreover, Attorney Bradley made no arrangements with another attorney to look after his cases and he gave no further explanation for missing three important filing deadlines.

¶15 The District Court cited our decision in Morris v. Frank Transportation Co. (1979), 184 Mont. 74, 601 P.2d 698, wherein we ruled that the defendant's illness did not constitute excusable neglect for purposes of Rule 60(b)(1). Citing Dudley v. Stiles (1963), 142 Mont. 566, 568, 386 P.2d 342, 343, we concluded that a failure to appear due to forgetfulness and the press of other more important business is not sufficient to establish excusable neglect.

> Even the most liberal approach to this problem cannot save Appellant's case. ". . . A liberal court cannot find excusable neglect where a defendant has willingly slumbered on his rights and ignored the judicial machinery established by law."

Morris, 184 Mont. at 76, 601 P.2d at 699 (quoting Dudley, 142 Mont. at 568, 386 P.2d at 343).

¶16 We agree with the District Court's analysis. Appellants' attorney argues in his brief on appeal that he was absent a good deal of time from his office during the months of July and August 1996; that he is a solo practitioner and operates without the benefit of a secretary or receptionist; and that due to his illness (severe depression), relatives and friends, none of whom were attorneys, picked up his mail from the post office. He contends that his chronic depression, which became severe during the period in question, rendered him unable to

9

perform detailed or lengthy mental tasks. Moreover, Appellants' counsel argues that this "information would have been made available to the District Court upon request. Judge Salvagni did not even inquire into the nature of counsel's illness, however."

¶17 In point of fact, Judge Salvagni did inquire of Attorney Bradley as to the reason for his failure to timely respond; it was Attorney Bradley who failed to adequately explain to the court the basis for his failure to appear on this clients' behalf. The transcript of the January 15, 1997 hearing reveals the following exchange:

> THE COURT: I have a question of you. Why did you not appear at the hearing on the motion for default?
>
> MR. BRADLEY: I don't dispute that Mrs. Parker properly sent notice to my office of that hearing, but I didn't personally see it. That's not necessarily an excuse that's acceptable under law. I was out of the office sick. I didn't sign for the letter. I don't have anybody else in my office. I don't have any secretaries or lawyers. I'm the only person in there. And when I was out of the office, two different people were picking up my mail. One is my mother; one is a friend of mine. And they sign "JMB" on those receipts when they pick them up, because the certified letter was not restricted delivery.
>
> THE COURT: Did you receive a copy of Judge Moran's order requiring the Defendants to respond by July 10th, I believe it was?
>
> MR. BRADLEY: That was his motion--that was his order denying our motion to dismiss on behalf of Defendant Wright, and yes, I did receive that.
>
> THE COURT: Why didn't you respond by July 10th?
>
> MR. BRADLEY: This is a complicated case, your Honor, and, again, I was out of the office quite a bit this summer due to illness.
> Our witnesses are widely scattered. Mr. Wright lives in Texas. A grandson, you have an affidavit from him, he's going to school in Georgia. Mrs. Old Coyote lives in Huntley. Some of the witnesses--and there is one affidavit from a nonrelative that's filed from Mr. Mike Cech. He lives in

10

Bozeman. For us to gather the information in that time was very difficult, especially due to my absences.

And I would note that according to Ms. Parker's affidavit of fees, she started work on this case a good six or eight months before she filed the Complaint, based on what she's charging for there. So they had lots of time.

Now, obviously in hindsight it would have been better for me to ask the Court for additional time to answer. I didn't do that because of my absences from the office.

When we did get the notice--or the order that default had been entered and a decree had been granted, we timely filed this motion to set that aside within 60 days. So I think we are here in timely fashion.

¶18 From this colloquy it is apparent that even when given the opportunity to do so, Attorney Bradley did not adequately explain his claim of illness to the court. He did not present any basis on which the court could have concluded that his depression was so severe that it completely incapacitated him and precluded him from appearing on behalf of his clients. Furthermore, Attorney Bradley's explanation rings hollow when one considers that he represented Appellant Old Coyote in connection with the negotiation and drafting of the May 7, 1996 agreement regarding the temporary restraining order; that he filed a motion to dismiss on behalf of Appellant Old Coyote on May 8, 1996; and that he filed a motion to dismiss on behalf of Appellant Wright on June 13, 1996.

¶19 Attorney Bradley chose to practice law without the benefit of even a secretary to receive and open the mail and tend to his office matters in his absence. Indeed, though he apparently knew that he was subject to bouts of severe depression, he failed to demonstrate that he had established any sort of contingency plan or arrangement with another attorney to monitor him or his practice if he became incapacitated because of his illness. Rather, he

chose to rely on non-lawyer friends and relatives to pick up his mail.

¶20 We conclude that the District Court correctly determined that Appellants failed to meet their burden to demonstrate good-cause grounds for granting relief from default judgment under Rule 60(b)(1), M.R.Civ.P.

¶21 Similarly, Appellants' argument that the court should have granted their motion for relief under Rule 60(b)(3), M.R.Civ.P., is also without merit. As noted by the District Court, Appellants' motion under Rule 60(b)(3), was based on their allegation that Nelson had committed fraud by misleading the court to award a 180' x 180' lot rather than the 60' x 60' lot evidenced in writing. Appellants contended that the statute of frauds and parol evidence rule should have prevented the court from considering the larger lot size and, as a corollary to this argument, that the relief granted on default, namely the easement across their property, exceeded the demand for judgment under Rule 54(c), M.R.Civ.P. The court disagreed, concluding that Nelson's testimony indicated that he had been led to believe that he owned the larger lot and that this testimony was supported by the fact that the residence he built for himself extended beyond the boundaries of the 60' x 60' lot. Moreover, the court noted that Nelson's complaint identified the 180' x 180' lot as the property being sought in the quiet title action and the adverse possession action. Accordingly, the court concluded that Appellants' failure to answer and contest Nelson's claim for the 180' x 180' lot did not impute fraud on Nelson's part.

¶22 Again, we agree with the District Court. Intrinsic fraud consists of false or fraudulent

representation or concealment made during court proceedings. Falcon v. Faulkner (1995), 273 Mont. 327, 332, 903 P.2d 197, 200 (citing Lance v. Lance (1981), 195 Mont. 176, 180, 635 P.2d 571, 574).

> Extrinsic fraud has been defined as some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy. [Citation omitted.] Extrinsic fraud is collateral to the matters tried by the court, but docs not include fraud in the matters on which the judgment was rendered.

In re Marriage of Miller (1995), 273 Mont. 286, 292, 902 P.2d 1019, 1022-23 (citing Pilati v. Pilati (1979), 181 Mont. 182, 193, 592 P.2d 1374, 1380; and Salway v. Arkava (1985), 215 Mont. 135, 140, 695 P.2d 1302, 1306).

¶23　Our examination of the record in this case does not reveal that Nelson's default judgment was obtained on the basis of either intrinsic or extrinsic fraud as required by Rule 60(b)(3), M.R.Civ.P. Indeed, Appellants' brief on appeal demonstrates little more than that they disagree with the allegations and claims in Nelson's complaint and with his testimony at the default hearing on September 9, 1996. However, a dispute as to the allegations and claims in a complaint and a disagreement as to a witness' testimony at a hearing do not, without more, impute fraud. In point of fact, it is precisely these sorts of disputes and disagreements that litigation and the fact-finding process--assuming one participates in it-- are designed to resolve.

¶24　We conclude that the court correctly found no basis for vacating Nelson's default judgment under Rule 60(b)(3), M.R.Civ.P., on the facts of this case.

13

¶25 Finally, Appellants contend that we should find a slight abuse of discretion on the part of the District Court because further litigation will result from the default judgment; because they were prejudiced by a change of judgeship during the pendency of their motion; because the court's order denying their motion to set aside the defaults and default judgment is not supported by the record; and because they believe that Nelson also committed serious procedural errors. In our view, none of these contentions support a finding of abuse of discretion, slight or otherwise, on the part of the District Court.

¶26 On the matter of further litigation, Appellants contend that further litigation will be necessary because Nelson does not have access to his newly decreed plot except over Appellants' land. Nelson disputes this allegation contending there is an existing road, built at his expense, which accesses the entire property. Even if, theoretically, some sort of further proceedings are necessary to resolve this access issue, Appellants cite no on-point authority for the proposition that the possibility of future litigation is grounds to set aside Nelson's default judgment. Similarly, Appellants contend that the possibility of the property being encumbered by a prior mortgage and questions regarding the survey and ownership of other improvements on the subject property will require further litigation. Again, these sorts of speculative arguments are not grounds to set aside the default judgment.

¶27 Appellants claim they were prejudiced by the change of judges during the pendency of this case. This argument is without merit. While Judge Salvagni did assume jurisdiction of this case from Judge Moran after Judge Moran's retirement, there is absolutely no proof

14

that Judge Salvagni was not thoroughly familiar with the case when he entered his order and memorandum on January 28, 1997, denying Appellants' Rule 55(c) motion or that the change of judges somehow prejudiced Appellants. We will not speculate, as Appellants do, on what Judge Moran might have done had he remained on the case. If Appellants' case was not adequately presented at the hearing on their motion to set aside the default judgment, that is not the fault of Judge Salvagni, and we will not hold the District Court in error for Appellants' own failure of proof.

¶28 Next, Appellants contend that substantial portions of the District Court's rationale in denying their motion for relief are not supported by the record. Having reviewed the record, we are not persuaded that this argument has any merit. The court's rationale is supported by the record. Similarly, Appellants contend that Nelson committed procedural errors at least as serious as their own failure to answer. Appellants do not explain how exactly they were prejudiced by these alleged errors or why "equity requires that the entire case be opened on the merits." Accordingly, we reject this argument as well.

¶29 Finally, Appellants contend that they have meritorious defenses under the statute of frauds and other theories that would be available to defeat the allegations in Nelson's complaint. The short answer to this contention is that before the court can grant a motion to set aside a default judgment, the movant must establish not only that he had a meritorious defense but also that there was "good cause" for not answering the complaint or responding or defending in any way in the first place. Maulding, 257 Mont. at 23, 857 P.2d at 296; Rule

15

55(c), M.R.Civ.P. Because, as noted above, Appellants failed in their burden to establish "good cause"--i.e., mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1), or fraud, misrepresentation, or misconduct of an adverse party under Rule 60(b)(3)--the District Court need not address, nor do we need to review, the claim that the defaulted party has meritorious defenses. Springs, 225 Mont. at 67, 731 P.2d at 335.

¶30 In summary, on the record presented on appeal, we find no abuse of discretion, slight or otherwise, by the District Court in its denial of Appellants' motion to set aside defaults and default judgment entered in favor of Nelson.

¶31 Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

16

February 24, 1998

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

JOSEPH M BRADLEY
ATTORNEY AT LAW
PO BOX 1047
LAUREL MT  59044-1047

CAROLYN S PARKER
PARKER LAW OFFICE
20 EAST OLIVE STREET
BOZEMAN MT  59715-4790

ED SMITH
CLERK OF THE SUPREME COURT

STATE OF MONTANA

BY: _D. Gallagher_
Deputy