No. 97-386

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 185

STATE OF MONTANA ex rel.

DEPARTMENT OF ENVIRONMENTAL QUALITY,

Plaintiffs and Respondents,

v.

ROD AND LINDA ROBINSON,

Defendants and Appellants.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Toole,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Patrick F. Flaherty, Great Falls, Montana

For Respondents:

David M. Rusoff, Department of Environmental Quality, Helena, Montana

Submitted on Briefs: June 25, 1998

Decided: July 23, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1 Rod and Linda Robinson appeal the denial of their motion to set aside a default and default judgment entered by the Ninth Judicial District Court, Toole County. Their motion was deemed denied by operation of law when the District Court failed to rule on it within 60 days as provided for by Rule 60(c), M.R.Civ.P. We affirm.**

**¶2 The sole issue we address is whether the District Court erred when it failed to set aside the default judgment and entry of default.**

BACKGROUND

**¶3 The Robinsons operate a motor vehicle wrecking facility near Oilmont, Montana. The Motor Vehicle Recycling and Disposal Act ("Act") requires persons who operate such a facility to obtain a wrecking facility license from the Department of Environmental Quality (DEQ), which is charged with enforcing the State's motor vehicle recycling and disposal laws. Section 75-10-511(1), MCA. Additionally, such persons are required to shield the facility from public view. Section 75-10-505, MCA; Rule 17.50.202(1), ARM.**

¶4 In 1995, the DEQ discovered that the Robinsons were operating a motor vehicle wrecking facility without a license, and that they had not shielded their facility from public view as required by the Act. Beginning in May 1995, the DEQ wrote letters to the Robinsons requesting that they bring their facility into compliance with the law. The Robinsons did not respond to any of the DEQ's informal attempts to rectify the situation.

¶5 When the Robinsons still had not responded to any of the DEQ's correspondence over the course of an entire year, in August 1996, the DEQ sent the Robinsons a certified letter stating that if they did not take steps to bring the facility into compliance with the law, the DEQ would initiate an enforcement action. The Robinsons, however, refused to accept delivery of the letter.

¶6 Finally, on August 9, 1996, the DEQ filed a complaint and application for a permanent injunction. It alleged that the Robinsons violated the law by operating a motor vehicle wrecking facility without a license and by failing to shield the facility from public view. The DEQ requested that the court (1) permanently enjoin the Robinsons from accepting any additional junk vehicles at their facility, (2) order them to properly shield all junk vehicles currently located on their property or alternatively to remove the vehicles to another licensed facility, and (3) assess a civil penalty pursuant to § 75-10-542(2), MCA, in the amount of $50.00 for each day of each violation until the cessation of all the violations alleged in the complaint. The DEQ served the complaint and summons on the Robinsons on August 20, 1996.

¶7 On September 3, 1996, Rod Robinson telephoned the DEQ's attorney. According to the attorney's testimony, he advised Robinson to retain an attorney and told him that if Robinson did not answer the complaint he "intended to procure a default [judgment]." He also told Robinson that "if he would submit the application materials [to obtain a license, he] would take no action on the default judgment." By letter dated September 4, 1996, the attorney memorialized the conversation and stated he would give the Robinsons fifteen days to submit a completed license application. The letter provides in part:

> This letter is to memorialize our telephone conversation yesterday, and to advise you of the status of your case. When we spoke, you indicated you had received your Summons, and that you needed additional time in which to

erect fencing around you[r] motor vehicle wrecking facility. I told you I would speak to the Program Manager, and would take no action on the Complaint for the time being. Please be advised, the time for you to answer the Complaint in District Court continues to elapse. If you want to contest the allegations in the Complaint, I suggest you hire a lawyer as soon as possible.

However, you seemed to indicate that you wanted to resolve this matter by bringing your facility into compliance with the applicable regulations. . . .

[T]he Program Manager is unwilling to grant you too much leeway simply because of the longstanding duration of the violations and the abortive attempts in the past to achieve compliance through various deals. Here is what the Department is willing to do: You must submit a <u>completed</u> application for a motor vehicle wrecking facility to the Department within 15 days from receipt of this letter. The application materials are enclosed. A partial application will not be acceptable. The only portion of the application that can be completed after the 15-day deadline is the review by the Historical Society, because that entails a process that is largely out of your control.

. . . .

I intend to procure a Default Judgement against you in District Court after the time allowed for answering the Complaint expires. I will take no action on the Default Judgement so long as you continue to work with the Department to bring your facility into compliance. If you follow through with the licensing, and do not attempt to erect shielding until after the Department has issued a license for the facility (i.e., after the sixty-day in-depth review of the application), I will allow additional time for completion of the shielding according to a regimented compliance schedule. Once the facility is licensed, and the shielding is in place, I will release the Default Judgement.

**¶8 On September 9, 1996, the DEQ's attorney telephoned Rod Robinson to confirm that Robinson had received the application materials. He again informed Robinson that the DEQ intended to pursue the default judgment. Subsequently, on September 21, 1996, the DEQ received the Robinsons' application form. The application, however, was incomplete, so on September 23, 1996, the DEQ wrote the Robinsons a letter by certified mail enumerating the deficiencies and allowing them an additional**

two weeks to submit the necessary information. The Robinsons failed to supply any additional information.

¶9 Approximately four weeks later on October 16, 1996, when the Robinsons still had not supplied any further information, the DEQ filed an application for entry of default. On October 23, 1996, the DEQ's attorney telephoned Rod Robinson to question him regarding the status of the application materials. Although the District Court had not yet entered the default, the DEQ's attorney informed Robinson that it had. He also informed Robinson that the DEQ would not pursue a judgment on the default if the Robinsons cooperated and worked diligently to comply with the law and submitted a completed application. The District Court entered default against the Robinsons on November 12, 1996.

¶10 By December 1996, the DEQ still had not received any further information from the Robinsons in support of their application, and it had not heard anything from them. The DEQ's attorney again attempted to telephone the Robinsons. However, the telephone number had either been changed or disconnected and he was unable to reach them. On December 18, 1996, he sent the Robinsons another letter by certified mail. In that letter he recounted the parties' telephone conversations and noted that it had been approximately two months since the initial deadline for submission of the application materials and since the Robinsons had communicated with the DEQ. He therefore concluded that the Robinsons were no longer attempting to cooperate with the DEQ to bring their facility into compliance. He ended his letter as follows:

> Therefore, I am no longer at liberty to work with you. If I do not receive your completed application ten days from the date of this letter, I intend to pursue judgement upon my default in District Court.

¶11 The Robinsons did not submit the completed application within ten days. However, approximately one month later, on January 15, 1997, Rod Robinson hand-delivered a license application. Once again, the application was missing certain information that the DEQ had requested in its September 23, 1996 letter. Specifically, it was missing the signature of an official with the County Planning or Zoning Board. That same day, the DEQ's attorney and the junk vehicle program manager met with Rod Robinson to discuss the application. They advised Robinson that the DEQ would give him a final extension of time until February 7, 1997, in which to obtain the necessary signature. They also told him that if the completed

application was not submitted by that date, the DEQ would apply for a default judgment.

¶12 The Robinsons did not submit the completed application by February 7, 1997. The DEQ waited for almost two more months past this deadline, but once again it neither received the completed application nor heard from the Robinsons. Accordingly, on April 2, 1997, it filed a request for entry of default judgment. On April 2, 1997, almost two years after the DEQ had first attempted on an informal basis to bring the Robinsons' facility into compliance with the law, the District Court entered the default judgment. It enjoined the Robinsons from maintaining or operating a motor vehicle wrecking facility, and entered judgment in the amount of $68,400.

¶13 The Robinsons subsequently obtained legal counsel, and on April 18, 1997, they filed a motion to set aside the default judgment. The District Court conducted an evidentiary hearing on June 5, 1997. However, the court did not rule on the motion within 60 days after it was filed, and the motion was thus deemed denied by operation of law. Rule 60(c), M.R.Civ.P. The Robinsons appeal.

## DISCUSSION

¶14 Did the District Court err when it failed to set aside the default judgment and entry of default?

¶15 The standard of review when a trial court has refused to set aside a judgment is whether there has been a slight abuse of discretion. In re Marriage of Martin (1994), 265 Mont. 95, 99, 874 P.2d 1219, 1222 (citing Lords v. Newman (1984), 212 Mont. 359, 366, 688 P.2d 290, 294). The standard for setting aside a default judgment and entry of default are well-established. The court may set aside a default judgment based upon mistake, inadvertence, surprise, excusable neglect, or any other reason justifying relief. Rules 55 (c) and 60(b)(1) and (6), M.R.Civ.P. An entry of default may be set aside "for good cause shown." Rule 55(c), M.R.Civ.P. To establish "good cause," the defendant must show that (1) he proceeded with diligence to set aside the default, (2) his neglect was excusable, (3) the judgment will be injurious to the defendant if allowed to stand, and (4) he has a meritorious defense to the plaintiff's cause of action. In re Marriage of Martin, 265 Mont. at 99, 874 P.2d at 1222 (citing Blume v. Metropolitan Life Ins. Co. (1990), 242 Mont. 465, 467, 791 P.2d 785, 786).

The policy in this state is to favor a trial or decision on the merits; default judgments are not favored. In re Marriage of Martin, 265 Mont. at 99, 874 P.2d at 1222. However, the burden of proof rests with the defendant seeking to set aside the default. In re Marriage of Martin, 265 Mont. at 99, 874 P.2d at 1222.

¶16 In this case the Robinsons contend that the default judgment and entry of default should be set aside pursuant to Rule 60(b)(1) and (6), M.R.Civ.P. They also argue that this Court "has the power to apply principles of equitable estoppel to set aside the default based on the representations of the DEQ's agents." Specifically, the Robinsons maintain that the DEQ repeatedly misled them into believing that as long as they cooperated with the DEQ officials by bringing their facility into compliance with the law, they would not have to get a lawyer and the DEQ would not pursue a default judgment. In particular, they point to the DEQ's letter dated September 4, 1996, wherein the DEQ attorney wrote in part that "I will take no action on the Default Judgement so long as you continue to work with the Department to bring your facility into compliance. . . . Once the facility is licensed, and the shielding is in place, I will release the Default Judgement." The Robinsons contend that as lay people they understood this letter to mean that the DEQ would lift all legal process that had been initiated against them so long as they continued to cooperate with the DEQ.

¶17 The Robinsons further insist that they did cooperate with the DEQ. They contend that as of January 15, 1997, they had remedied all deficiencies in the application, except that they had not yet obtained the signature or statement from an official from the Zoning Board. On that date, Rod Robinson thus drove to Helena to hand-deliver the application, but the official was not in the office that day. The Robinsons do not contend, however, that they took any steps after that date to either obtain the necessary signature by the final deadline of February 7, 1997, or that they contacted the DEQ to relay any problems with getting the signature.

¶18 In the past, this Court has set aside default judgments on the grounds of mistake or excusable neglect where pro se defendants have misunderstood communications from the opposing attorney or were misled, even if inadvertently, into believing that a cause of action would not be pursued or that they did not have to file an answer to a complaint. See, e.g., In re Marriage of Martin, 265 Mont. at 101-02, 874 P.2d at 1234; In re Marriage of Broere (1994), 263 Mont. 207, 210, 867 P.2d 1092, 1094. However, even were this Court inclined to hold that this case falls into that category

No

of cases where default judgment should be set aside, the Robinsons still have the burden of demonstrating that they have a meritorious defense to the cause of action before the entry of default may be set aside. In re Marriage of Martin, 265 Mont. at 99, 874 P.2d at 1222. In this case, they have not met that burden. We thus need not decide whether the Robinsons' failure to file an answer to the complaint was the result of mistake or excusable neglect.

¶19 When inquiring into whether a party has offered a meritorious defense, it is not the Court's function to determine factual issues or resolve the merits of the dispute, but instead is to simply determine whether the defendant has presented a prima facie defense. Blume v. Metropolitan Life Ins. Co. (1990), 242 Mont. 465, 470, 791 P.2d 784, 787. In so doing, however, this Court will inquire as to whether the offered defense is meritorious.

¶20 In this case, the Robinsons have offered no defense at all, let alone a meritorious defense, to the charges contained in the complaint. They were charged with violating § 75-10-511(1), MCA, for failing to obtain a license to operate a motor vehicle wrecking facility, and with violating § 7-10-505, MCA and Rule 17.50.202, ARM, for failing to shield their motor vehicle wrecking facility from public view. The Robinsons did not file a proposed answer as part of their motion to set aside the default judgment and entry of default, and at the hearing on their motion to set aside the default judgment they offered no evidence to dispute the charges. At no time have they denied operating a motor vehicle wrecking facility; at no time have they disputed the allegation that they were operating their facility without a license; and at no time have they alleged that their facility was shielded from public view. Indeed, Rod Robinson admitted at the hearing that he had been operating his facility for three years and that he has never obtained a license. In short, the Robinsons have offered no evidence of a meritorious defense to these charges.

¶21 Instead of contesting the charges contained in the complaint, they contend they have a meritorious defense because there was "no rational justification to impose" the civil penalty of $68,400. A quick review of the Robinsons' arguments in support of this position reveals that their proposed legal defense is not meritorious.

¶22 First, they argue that the District Court lacked jurisdiction to enter the judgment against them, and in so doing it imposed a criminal penalty in violation of their constitutional rights to due process. They maintain that the DEQ usurped the

**offices of the County Attorney and the Attorney General who alone have the authority to file an information in District Court against them. In support of their position, they cite the dissenting opinion in State v. Mummy (1994), 264 Mont. 272, 871 P.2d 868, and argue that § 75-10-542, MCA, is unconstitutional. Their position is not meritorious.**

**¶23 The penalty provisions of the Motor Vehicle Recycling and Disposal Act provide:**

> **Penalties**. (1) A person who willfully violates this part, except 75-10-520, is guilty of a misdemeanor and upon conviction shall be fined not to exceed $250, imprisoned in the county jail for a term not to exceed 30 days, or both.
>
> (2) A person who violates this part, except 75-10-520, a rule of the department, or an order issued as provided in this part shall be subject to a civil penalty of not more than $50. Each day upon which a violation of this part or a rule or order occurs is a separate violation.

Section 75-10-542, MCA. **What the Robinsons fail to acknowledge is that the DEQ's prayer for relief requested the *civil* penalty pursuant to § 75-10-542(2), MCA; the DEQ did not file an information or seek to convict the Robinsons of a misdemeanor pursuant to § 75-10-542(1), MCA. Thus, the DEQ did not usurp any authority of the County Attorney or the Attorney General.**

**¶24 Additionally, Mummey is irrelevant to DEQ's argument on appeal. In Mummy, the dissent concluded that § 45-5-201, MCA (defining the crime of assault) and § 45-5-202(2)(a), MCA (defining the crime of felony assault) were unconstitutionally vague as applied to the facts of that case, because those statutes failed to give fair warning that a person could be charged and convicted of felony assault rather than misdemeanor assault by kicking someone while wearing a tennis shoe. Mummey, 264 Mont. at 285, 871 P.2d at 875 (Trieweiler, J., dissenting). In this case, on the other hand, the Robinsons have not alleged that the Motor Vehicle Recycling and Disposal Act is unconstitutionally vague in that it fails to give fair warning that certain conduct, such as failing to obtain a license or failing to shield a motor vehicle wrecking facility from public view, can lead to the penalty provided for in § 75-10-542(2), MCA. Moreover, as already pointed out, the Robinsons were not charged with any criminal penalty. The Robinsons failed to demonstrate how their reference to the legal standard for voiding a criminal statute for vagueness has any connection to**

their argument that the District Court lacked jurisdiction to enter the judgment or violated their constitutional rights to due process. We hold that the Robinsons have not presented a meritorious defense to the cause of action.

¶25 The Robinsons next argue that the complaint itself did not pray for a sum certain as a penalty, and that the District Court should have held a hearing before determining the judgment amount. Although they cite no authority for their position, it appears they base their argument upon Rule 55(b), M.R.Civ.P. Rule 55(b)(1), M.R. Civ.P. provides that upon affidavit of the amount due, the clerk of court shall enter a judgment by default when the plaintiff's claim is for "a sum certain or for a sum which can by computation be made certain. . . ." In this case, the complaint requested that the court assess a civil penalty pursuant to § 75-10-542(2), MCA, in the amount of $50.00 for each day of each violation charged in the complaint, until the cessation of all violations. Contrary to the Robinsons' contention, that request was for a sum that by computation could be made certain by multiplying $50.00 by the number of days of violation for each offense.

¶26 Moreover, the default judgment in this case was entered by the District Court and not by the clerk of court. The restrictions imposed by Rule 55(b)(1), M.R.Civ.P., that default judgment shall be entered only by the clerk when the claim is for a sum certain or which by computation could be made certain thus did not apply. Rule 55(b)(2), M.R.Civ.P., authorizes the court, if necessary, to hold a hearing to determine the amount of damages. In this case, a hearing was not necessary because the court by simple calculation could easily determine the amount of damages. The court did not abuse its discretion in failing to hold a hearing.

¶27 Finally, the Robinsons argue that the default judgment and entry of default should be set aside because the DEQ did not serve them with copies of its application for entry of default, request for entry of default judgment, and other supporting documents. However, when a party against whom a default judgment is sought has not appeared in an action, notice is not required. Rule 55(b), M.R.Civ.P.

¶28 In sum, we hold that the Robinsons have not presented a meritorious defense to the DEQ's cause of action, and that the District Court did not err in failing to set aside the default judgment and entry of default.

¶29 Affirmed.

/S/ WILLIAM E. HUNT, SR.

 We Concur:

 /S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JAMES E. PURCELL

District Judge, sitting for Justice James C. Nelson